IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:15-cv-1106 |
| | ) | |
| ALL ASSETS IN AUSTRALIA AND | ) | Hon. Liam O'Grady |
| ELSEWHERE LISTED IN ATTACHMENT A, | ) | |
| AND ALL INTEREST, BENEFITS, AND | ) | |
| ASSETS TRACEABLE THERETO, | ) | |
| | ) | |
| Defendants in Rem. | ) | |

**UNITED STATES' MOTION TO STRIKE CLAIMS**

COMES NOW THE UNITED STATES, by and through the undersigned attorneys, and

moves this Court pursuant to 28 U.S.C. § 2466 and, alternatively, pursuant to Rule G(8)(c)(i) of

the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions,

Federal Rules of Civil Procedure, to strike the claims of Megamedia Limited, Megarotic Limited,

Megaupload Limited, and Megavideo Limited (the "Corporate Claimants"); Kim Dotcom; and

Mathias Ortmann.   In support of this motion, the United States submits the following facts and

authority.

**BACKGROUND**

On August 28, 2015, the United States commenced this civil action by filing a Verified

Complaint for Forfeiture *In Rem* (Doc. #1) for certain assets derived from a criminal copyright

and money laundering scheme for which Claimants Kim Dotcom, Mathias Ortmann, and

Megaupload Limited were indicted in criminal case 1:12cr3 before this Court.   On November 6,

2015, Claimants Kim Dotcom, Mathias Ortmann, and the Corporate Claimants filed verified

claims.   Docs. #16, 17, 18.   In particular, Kim Dotcom filed the claims on behalf of the

Corporate Claimants.   Doc. #18.   Rule G(5)(b) of the Supplemental Rules for Admiralty or

Maritime Claims and Asset Forfeiture Actions requires a claimant to answer a complaint within

twenty-one (21) days of filing a claim.   Originally, the deadline for answers by the Claimants

would have been November 27, 2015.[1]

On November 6, 2015, the Claimants filed a request with the Court to stay this action.

Doc. #21.   On December 7, 2015, the Court granted the Claimants' motion in part, stating: "This

action is STAYED until the United States Court of Appeals for the Fourth Circuit issues a

decision in *United States v. Batato*, 1:15-1360." (Doc. #32 at 6).

On December 1, 2015, U.S. Magistrate Judge Michael S. Nachmanoff considered a

request by the Claimants for an extension of time within which to answer the Verified

Complaint.   He granted the motion and said, in pertinent part, that if the district court granted a

stay of the underlying action that the "Claimants' time to respond to the Complaint is extended to

a date … seven (7) days after the Court lifts the stay."   Doc. #31.

In the related civil forfeiture case based on the same criminal conduct but involving

different assets, *United States v. All Assets, etc.*, 89 F.Supp.3d 813 (E.D. Va. 2015) (hereinafter

"*All Assets*"), this Court struck the claims of Claimants Kim Dotcom, Mathias Ortmann,

Megaupload Limited, Megamedia Limited, and others pursuant to the fugitive disentitlement

statute, 28 U.S.C. § 2466.   That case was appealed to the U.S. Court of Appeals for the Fourth

Circuit, which affirmed this Court's rulings in a published decision issued on August 12 of last

---

[1]     The statute governing civil forfeiture actually makes it clear that an answer is <u>required</u> to
be filed "not later than 20 days after the date of the filing of the claim."   18 U.S.C. §
983(a)(4)(B).

year. *United States v. Batato*, 833 F.3d 413 (4th Cir. 2016). Claimants petitioned for rehearing

*en banc*. The government filed a response, and on November 9, 2016, the court of appeals

denied the petition for rehearing. (Appeal No. 15-1360, Doc. 70). Claimants in the related

case then moved to stay issuance of the mandate until the claimants filed a petition for certiorari

in the Supreme Court. On January 5, 2017, the court of appeals denied the motion to stay

issuance of the mandate. (Appeal No. 15-1360, Doc. 73). The mandate related to the

judgment dated August 12, 2016, issued on January 13, 2017. (Appeal No. 15-1360, Doc. 74).

On April 7, 2017, claimants filed a petition in *Batato* for certiorari with the United States

Supreme Court. Case No. 16-1206. On October 2, 2017, the Court denied the petition. 583

U.S. ___; 2017 WL 1300219, U.S., Oct. 02, 2017; Doc. #129.

The stay ordered by this Court on December 7, 2015, expired on August 12, 2016, when

the Fourth Circuit issued its "decision." According to Judge Nachmanoff's order, an Answer

was due on August 19, 2016, which was seven days after the stay expired. When the Fourth

Circuit stayed issuance of the mandate on September 26, 2016, as a result of the claimants'

motion for rehearing (Appeal No. 15-1360, Doc. 65), the government had not yet moved to strike

the claims in the instant case for failure to file a timely answer, and out of an abundance of

caution it has patiently withheld doing so. The related appeal became final on October 2, 2017

when certiorari was denied. There is currently no stay in effect, and no timely answer (or a

possible excuse for failure to timely answer the Complaint) was ever filed.

**STATEMENT OF FACTS**

**Kim Dotcom**

Claimant Kim Dotcom was indicted in this district on January 5, 2012, for racketeering conspiracy (18 U.S.C. § 1962(d)), copyright infringement (18 U.S.C. § 2319 and 17 U.S.C. § 506) and money laundering conspiracy (18 U.S.C. § 1956(h)).   (Case No. 1:12cr3; Doc. 1).   A superseding indictment that added wire fraud charges (18 U.S.C. § 1343) was returned on February 16, 2012. (Case No. 1:12cr3; Doc. 34).   The attached Declaration of FBI Special Agent Seunghyun Eom establishes that Claimant Kim Dotcom was arrested in New Zealand on the original indictment on January 19 or 20, 2012, and released on bond.   Attachment 1. at par. 4.   The attached affidavit of Peter David Marshall, Crown Counsel at the New Zealand Crown Law Office, states that Claimant Kim Dotcom could consent to surrender to the United States Government but has instead opposed extradition.   Attachment 2 at par. 12.   On or about December 23, 2015, Claimant Kim Dotcom was found eligible for surrender to the United States by New Zealand District Court Judge N.R. Dawson on all counts of the superseding indictment. Attachment 1 at par. 6.   Claimant Kim Dotcom has appealed the eligibility finding and continues to resist extradition. *Id.*

**Mathias Ortmann**

Claimant Mathias Ortmann was indicted in this district on January 5, 2012, for racketeering conspiracy (18 U.S.C. § 1962(d)), copyright infringement (18 U.S.C. § 2319 and 17 U.S.C. § 506) and money laundering conspiracy (18 U.S.C. § 1956(h)) (Case No. 1:12cr3).   A superseding indictment that added wire fraud charges (18 U.S.C. § 1343) was returned on February 16, 2012.   The attached Declaration of FBI Special Agent Seunghyun Eom establishes

4

that Claimant Ortmann was arrested in New Zealand on the original indictment on January 19 or 20, 2012 and released on bond.   Attachment 1 at par. 4.   The attached affidavit of Peter David Marshall, Crown Counsel at the New Zealand Crown Law Office, states that Claimant Mathias Ortmann could consent to surrender to the United States Government but has instead opposed extradition.   Attachment 2 at par. 12.   On or about December 23, 2015, Claimant Mathias Ortmann was found eligible for surrender to the United States by New Zealand District Court Judge N.R. Dawson on all counts of the superseding indictment. Attachment 1 at par. 6. Claimant Mathias Ortmann has appealed the eligibility finding and continues to resist extradition.   *Id.*

**Megamedia Limited, Megarotic Limited, Megaupload Limited, and Megavideo Limited**

Megaupload Limited was indicted in this district on January 5, 2012, for racketeering conspiracy (18 U.S.C. § 1962(d)), copyright infringement (18 U.S.C. § 2319 and 17 U.S.C. § 506) and money laundering conspiracy (18 U.S.C. § 1956(h)) (Case No. 1:12cr3).   A superseding indictment that added wire fraud charges (18 U.S.C. § 1343) was returned on February 16, 2012.   Megamedia Limited, Megarotic Limited, Megaupload Limited, and Megavideo Limited are companies that Claimant Kim Dotcom largely owns and controls. Attachment 1 at par. 16-17.   In fact, Claimant Kim Dotcom signed the verified claim as the authorized signatory on behalf of these Corporate Claimants. Doc. #18.

**Assets**

All of the assets listed in Attachment A that are outside of the United States have been placed in custody of the respective countries based on treaty requests from the United States. These assets were initially restrained by this Court in the underlying criminal matter, and, based

on the criminal restraining orders (which are still in force), they were restrained in Australia and the United Kingdom.   The remaining assets are in government custody within the United States. Warrants of Arrest *In Rem* have been executed on these assets.   *See* Doc. ## 4-13.   Publication has occurred, as reflected in the Notice of Publication filed October 22, 2015.   Doc. #14.

## LEGAL ARGUMENT

### A.  Fugitive Disentitlement Statute

The fugitive disentitlement doctrine is codified in 28 U.S.C. § 2466 as follows:

(a)   A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person—

(1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution—

(A) purposely leaves the jurisdiction of the United States;

(B) declines to enter or reenter the United States to submit to its jurisdiction; or

(C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and

(2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

(b)   Subsection (a) may be applied to a claim filed by a corporation if any majority shareholder, or individual filing the claim on behalf of the corporation is a person to whom subsection (a) applies.

28 U.S.C. § 2466.

"Because the fugitive disentitlement doctrine goes to the right of the claimant to assert any defense to the forfeiture action, a motion filed by the United States to strike the claim under Section 2466, like a challenge to the claimant's standing, must be addressed before the court

6

considers any motion filed by the claimant." Stefan D. Cassella, *Asset Forfeiture Law in the United States* (2d Ed. 2013), § 9-4 (2013) citing *United States v. $6,976,934.65 Plus Interest*, 478 F.Supp.2d 30, 45 (D.D.C. 2007) (holding that, because applying the fugitive disentitlement doctrine will bar a claimant from contesting a forfeiture on any ground, the court must rule on the Government's Section 2466 motion before addressing any motion filed by the claimant); *United States v. $6,976,934.65 Plus Interest*, 486 F.Supp.2d 37, 39 (D.D.C. 2007), (same case, denying motion for reconsideration on this issue, and holding that the Government's motion under section 2466 must take precedence over any threshold motion that would favor the fugitive, including a motion to dismiss for improper venue), *rev'd on other grounds*, 554 F.3d 123 (D.C. Cir. 2009).

As this Court noted in *All Assets*, Section 2466's plain language identifies five prerequisites that must be met before a court may exercise its discretion to disentitle a claimant:

> (1) a warrant or similar process must have been issued in a criminal case for the claimant's apprehension;
> (2) the claimant must have had notice or knowledge of the warrant;
> (3) the criminal case must be related to the forfeiture action;
> (4) the claimant must not be confined or otherwise held in custody in another jurisdiction; and
> (5) the claimant must have deliberately avoided prosecution by (A) purposefully leaving the United States, (B) declining to enter or reenter the United States, or (C) otherwise evading the jurisdiction of a court in the United States in which a criminal case is pending against the claimant.

*All Assets*, at 825-26 (citations omitted).

The analysis of whether an alleged fugitive has the specific intent "to avoid criminal prosecution" is done under the "totality of the circumstances." *Id.,* at 826 (*quoting United States v. Technodyne LLC*, 753 F.3d 368, 378 (2d Cir. 2014), and *citing Collazos v. United States*, 368 F.3d 190, 201 (2d Cir. 2004)). *See also Batato,* 833 F.3d at 432 ("the district court

7

did not rely solely on the claimants' resistance to extradition.   Instead, it reviewed each claimant

and noted additional evidence of an intent to avoid prosecution.").   Furthermore, in conducting

an analysis of the situation before it, specific intent to avoid prosecution need only be one motive

in refusing to enter the United States; it need not be the sole, dominant, or principal reason.   *See*

*id.,* at 430.

The Fourth Circuit has also recognized that application of Section 2466 is not limited to

traditional fugitives who have fled the United States:

> Congress clearly anticipated § 2466 would apply to individuals with no reason to
> come to the United States other than to defend against criminal charges. As the
> Second Circuit noted in *Collazos*, "Subpart B also applies to persons who,
> qualifying in all four other respects for disentitlement, decline to 'enter' the
> United States' jurisdiction."   368 F.3d at 199.   Because the subpart explicitly
> applies to both those refusing to "enter" and those refusing to "re-enter," §
> 2466(a)(1)(B), the court reasoned the former category could only be those who
> have never before entered the United States.   *Id.* at 199–200 (finding the statute
> applies to persons who "may have never set foot within the territorial jurisdiction
> of the United States, know that warrants are outstanding for them and, as a result,
> refuse to enter the country" (emphasis added)). Such individuals will often be
> foreign nationals with no ties to the United States other than their alleged criminal
> conduct and the indictment describing it.

*Id.,* at 430.

Fugitive disentitlement "is grounded on the impropriety of permitting a fugitive to pursue

a claim in federal court where he might accrue a benefit, while at the same time avoiding an

action of the same court that might sanction him."   *United States v. $671,160.00 in U.S.*

*Currency*, 730 F.3d 1051, 1057–58 (9th Cir. 2013) (*quoting United States v. Eng,* 951 F.2d 461,

465 (2d Cir. 1991)).   A fugitive claimant "facing both incarceration and forfeiture for his

misdeeds, attempts to invoke from a safe distance only so much of a United States court's

jurisdiction as might secure him the return of alleged criminal proceeds while carefully shielding

himself from the possibility of a penal sanction."   *$671,160.00*, 730 F.3d at 1057 (quoting

*Collazos,* 368 F.3d at 200).   Fundamentally, a fugitive claimant "has demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim."   *$671,160.00*, 730 F.3d at1059-60 (*quoting Ortega-Rodriguez v. United States*, 507 U.S. 234, 246 (1993); *Alie v. Sims*, 788 F.2d 954, 959 (3d Cir. 1986)).

Though disentitlement of claimants under Section 2466 is discretionary, rather than mandatory, courts have found that the exercise of discretion to strike a claim under § 2466 is necessary to protect the integrity of the judicial system.   *United States v. Real Property Known as Tamarind Dr.*, 2005 WL 2649001, at *3 (S.D.N.Y. Oct. 14, 2005).   *See also United States v. One 1988 Chevrolet Cheyenne Half-Ton Pickup Truck*, 357 F.Supp.2d 1321, 1328-32 (S.D. Ala. 2005) (finding that exercise of the court's discretion in favor of the claimant is not warranted merely because the claimant is afraid that he might be convicted in a criminal case, or because claimant thinks the Government's case is weak.   If anything, a weak case would provide an incentive for claimant to return to the United States to clear his name and reclaim his property.)

     1)   *Application of the Fugitive Disentitlement Statute*

In this case:

     a)   *Warrants or Similar Process Have Been Issued*

Claimants Kim Dotcom, Megaupload Limited, and Mathias Ortmann have been indicted in this district, and warrants have been issued for the individual Claimants' arrest. Attachment 1 at par. 3 & 5.

     b)   *Claimants Have Knowledge of the Indictment*

The knowledge element requires that a claimant "know or have reason to know that he is subject to arrest in the United States." *$6,976,934.65*, 554 F.3d at 130.   Claimants Kim Dotcom

and Mathias Ortmann were subject to extradition proceedings in New Zealand associated with their indictment in the United States, and refused to waive extradition.   Attachment 2 at par. 12. They have both been found eligible for extradition by the New Zealand District Court and are currently appealing that decision and continuing to resist extradition.   Attachment 1 at par. 6.

Moreover, in their motion to dismiss in *All Assets,* (Doc. #19), claimants requested that the case be dismissed or stayed pursuant to 18 U.S.C. § 981(g)(2) which authorizes a stay where the claimant "is the subject of a related criminal investigation or case."   "Given their lengthy, and apparently expensive, intransigence with regard to the underlying controversy, it cannot be argued that they were unaware of the statute's consequences and therefore unable to waive." *Batato*, 833 F.3d at 428.   Thus both individual claimants are aware of the underlying criminal indictment.

c)       The Criminal Case is "related" to this Civil Forfeiture Case

The criminal and this civil case arise out of the same facts and circumstances.   One need only compare the superseding indictment with the civil forfeiture complaint, (Doc. #1), to conclude that both cases are based on the same criminal conduct.   Two cases are sufficiently related if they arise out of the same facts and circumstances.   *United States v. Contents of Account Number 68108021 (Collazos),* 228 F.Supp. 2d 436, 440 (S.D.N.Y. 2002)).   *See also United States v. $6,976,934.65 Plus Interest*, 554 F.3d 123, 131 (D.C. Cir. 2009) (a civil forfeiture action is "related" to a criminal prosecution being evaded if "the facts that underlie the prosecution being evaded also form the basis for the forfeiture action").

Indeed, again, in their motion to dismiss the *All Assets* case (Doc. #19), Claimants requested that that related case be dismissed or stayed pursuant to 18 U.S.C. § 981(g)(2) which

authorizes a stay where the claimant "is the subject of a related criminal investigation or case."

In their legal memorandum accompanying their motion to dismiss, claimants asserted that the

criminal case "is obviously 'related' to the civil action." (*All Assets*, Doc. #20 at 29).   Thus, on

this point, all parties agree.

d)      *Claimants Are Not Confined Overseas*

Claimants are not being confined or held in custody overseas, such that they are

prevented from voluntarily surrendering on the criminal warrants.   Attachment 1 at par. 4;

Attachment 2 at par. 8, 12.   On October 4, 2017, Kim Dotcom tweeted: "It could be worse. I'm

on bail, I keep building disruptive Internet tech, I can see my kids grow up. Believe it or not, I'm

happy, always."   Attachment 1 at par. 12(o).

e)      *Claimants Deliberately Avoided Prosecution*

Claimants Kim Dotcom and Mathias Ortmann are deliberately avoiding criminal

prosecution by declining to enter the United States where the criminal case is pending.   The key

issue in determining whether a person is a fugitive from justice is whether that person has

specific intent to avoid prosecution.   It is not, as the claimants contended in the related case,

whether the desire to avoid prosecution is the person's sole intent for remaining outside the

United States.   *See Batato*, 833 F.3d at 429.   In *All Assets*, this Court found that the Claimants

here, among others, "deliberately declined to enter the United States in order to avoid criminal

prosecution in this country."[2]   89 F.Supp.3d at 827.   The Fourth Circuit rejected claimants'

---

[2]      Any attempt now by the claimants to challenge either the constitutionality or legal
application of the fugitive disentitlement doctrine in this case would surely fail.   All of the
factors for application of the doctrine of issue preclusion are present now that the Court of
Appeals has affirmed this Court's previous analysis and upheld the decision to strike the claims

11

reading of the statute:

> Because the statute must apply to people with no reason to come to the United States other than to face charges, a "sole" or "principal" purpose test cannot stand. The principal reason such a person remains outside the United States will typically be that they live elsewhere. A criminal indictment gives such a person a reason to make the journey, and the statute is aimed at those who resist nevertheless. *** Because the plain language of the statute, the legislative intent, and the weight of persuasive authority all favor doing so, we adopt a specific intent standard for § 2466 and affirm the district court.

*Batato*, 833 F.3d at 430, 431.

---

in the prior case under 28 U.S.C. § 2466.    In *Sandberg v. Virginia Bankshares, Inc.*, the Fourth Circuit explained:

> The doctrine of issue preclusion forecloses the "relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate …."

979 F.2d 332, 343 (4th Cir. 1992), *opinion vacated on motion of parties*, 1993 WL 524680 (4th Cir. Apr. 7, 1993) (citations omitted).

The doctrine of issue preclusion applies because: (1) there was a full and fair opportunity to litigate the identical issue, *i.e.*, fugitive disentitlement, in the prior action; (2) the issue (application of the statutory fugitive disentitlement doctrine) was actually litigated in the prior action as there was extensive briefing and argument on the issue; (3) the issue of fugitive disentitlement was decided in a final judgment, which has now been affirmed on appeal, including a denial of certiorari by the Supreme Court; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action as the instant claimants are identical or in privity with the claimants in the prior case.    *See Syverson v. International Business Machines Corp.,* 472 F.3d 1072, 1078 (9th Cir. 2007).    However, because application of the fugitive disentitlement doctrine is discretionary, even when all of the enumerated factors are present as they are here, the government urges this Court to make a new, independent determination that discretionary application of the fugitive disentitlement statute to the claims herein requires the Court to reach the same conclusion as in the prior case.    *See All Assets*, 89 F.Supp.2d at 831-35.    If anything, there is less reason for this Court to exercise discretion in favor of the claimants now as opposed to over two years ago.    In that intervening time, the claimants have continued to fight extradition despite a 300 page decision on December 21, 2016, by an appellate court in New Zealand that they are subject to extradition, and despite their continuing to draw down the restrained assets for living and legal expenses. Attachment 3.

In the intervening two years since this Court's decision in *All Assets*, another court of appeals, following *Batato,* has rejected a claimant's "sole intent" argument as to the reason why a claimant remains outside the United States.

> We join the Second, Fourth, and Ninth Circuits in holding that, while   §
> 2466 requires the government to prove that the claimants had a specific intent of
> avoiding criminal prosecution in deciding to remain outside the United States, the
> statute does not require that that intent be the sole or principal intent. As the other
> three circuits have noted, the text of the statute does not imply such a requirement.
> Furthermore, Congress was certainly able to impose a more stringent intent
> requirement and knew how to do so, but chose not to in this instance. Congress
> also intended for foreign nationals to be subject to § 2466, as it included both
> failing to enter and to reenter as ways of avoiding criminal prosecution. 28 U.S.C.
> § 2466(a)(1)(B). Therefore, Congress contemplated that non-citizens who had not
> been to the United States but who nevertheless failed to come to the country after
> a criminal indictment would be subject to disentitlement. These individuals likely
> have many reasons for not coming to the United States, only one of which may be
> to avoid criminal prosecution. However, Congress still explicitly included them in
> the reach of § 2466.

*United States v. $525,695.24, Seized from JPMorgan Chase Bank Inv. Account#xxxxxxxx*,

869 F.3d 412, 419 (6th Cir. 2017).

Based on a review of the "totality of the circumstances," the individual claimants here continue to demonstrate a specific intent to avoid criminal prosecution relevant to the current action.   The individual Claimants continue to resist their extradition from New Zealand, even after they have been found eligible for extradition.   As the Fourth Circuit explained:

> The claimants' principal argument is that the district court impermissibly relied on the
> fact that each of them is fighting extradition in finding specific intent. But the district
> court did not rely solely on this evidence—it merely considered it as a relevant part of a
> holistic analysis.   And the weight of persuasive authority on this question clearly favors
> finding opposition to extradition relevant to the inquiry.   The claimants are unable to
> respond to the government's logical conclusion that a "three-year, multi-million-dollar
> quest to oppose coming to the United States is most surely relevant to their intent."

*Batato*, 833 F.3d at 431-32 (citations omitted).   All of the statements made by and conditions

relevant to the individual claimants in *All Assets* remain.[3]   In addition, more recently Kim

Dotcom made the following comments:

> a.   On or about August 10, 2016, Dotcom tweeted the following: "Good that
>
> I'll never get extradited to the land of corrupt politicians & rigged courts.
>
> New Zealand Appeal Judges will apply the law. I win."
>
> b.   On or about September 7, 2016, Dotcom tweeted the following:
>
> "Remember: US tried to settle this case twice via Crown if I accept 'some'
>
> NZ copyright liability. No extradition. I said no. I want justice."
>
> c.   On or about August 29, 2016, CNBC published an article entitled,
>
> "Megaupload founder Kim Dotcom wouldn't get a fair trial in the US:
>
> Lawyer."[4] The article included an audio interview with Dotcom's
>
> attorney, Ira Rothken, who is described as saying the following: "Rothken
>
> said that should he lose this hearing however, Dotcom will appeal to
>
> another court in Wellington, New Zealand, and then to the country's
>
> Supreme Court if it goes that far."

Attachment 1 at par. 12-13.

---

[3]    The *Batato* court noted a few examples from *All Assets*: "Kim Dotcom posted a message to Twitter stating 'HEY DOJ, we will go to the U.S. No need for extradition. We want bail, funds unfrozen for lawyers & living expenses.' …   The court rightly found this and other public statements to strongly suggest Dotcom was resisting extradition to posture for criminal proceedings, using the ability to avoid prosecution as leverage.   …   Ortmann made statements in declarations that [he was] "actively contesting the legal basis on which the United States has issued the indictment."   *Batato*, 833 F.3d at 432.   A fuller list is included in *All Assets*, 89 F.Supp. 3d at 827-829.

[4]    The CNBC article is available at http://www.cnbc.com/2016/08/29/megaupload-founder-kim-dotcom-wouldnt-get-a-fair-trial-in-us-lawyer-says-as-extradition-appeal-hearing-starts-in-new-zealand.html .

Based on these circumstances, Claimants Kim Dotcom and Mathias Ortmann remain

fugitives within the meaning of the fugitive disentitlement statute at this time.

> f)      *Fugitive Disentitlement Applies Equally to the Corporate*
> *Claimants*

Finally, because Claimant Kim Dotcom, who is himself a fugitive under Section 2466, is

the Corporate Claimants' controlling shareholder and, in particular, because he signed the claims

on behalf of the corporations, a presumption of disentitlement applies to the corporations as well.

*See All Assets*, at 828.   The addition of subsection (b) to Section 2466 was intended to "clarif[y]

that a natural person who is a fugitive may not circumvent this provision by filing, or having

another person file, a claim on behalf of a corporation that the fugitive controls."   H.R. Rep.

107-250(I), Sec. 117.   Here, the corporate claims should be disentitled, just as Kim Dotcom's

individual claim should be because it is undisputed that he is "the majority shareholder, or

individual filing the claim on behalf of the corporation [and] is a person to whom subsection (a)

applies." 28 U.S.C. § 2466(b).[5]

> 2)    ***The Court Should Exercise Its Discretion to Strike the Claims***

The United States has hereby established that the claims of Kim Dotcom, Mathias

Ortmann, Megamedia Limited, Megarotic Limited, Megaupload Limited, and Megavideo

Limited should be stricken based on the analysis authorized by the fugitive disentitlement statute.

---

[5]   The corporate claimants in *All Assets* and *Batato* never seriously contended that § 2466(b) did
not apply to them.   Indeed, the opinion in *Batato* does not even mention an argument that the
corporate claimants' claims are foreclosed by § 2466(b).   Claimants' petition seeking certiorari
in the Supreme Court did not even mention the corporate claimants or seek review of this Court's
decision to strike the corporate claims in that case.   Any suggestion that § 2466(b) does not
apply to the corporate claimants has long been abandoned.

Any argument as to the constitutionality of Section 2466 is foreclosed by the Fourth Circuit's decision in *Batato*,[6] which the Fifth Circuit promptly relied on with little elaboration to conclude that application of Section 2466 did not violate due process.  *United States v. 2005 Pilatus Aircraft, Bearing Tail No. N679PE*, 838 F.3d 662, 664 (5th Cir. 2016).   The United States asks the Court to strike these claims to prevent the Claimants from "mak[ing] a mockery of our system of justice." *United States v. Kivanc*, 714 F.3d 782, 791 (4th Cir. 2013).

### B.  Failure to File a Timely Answer and Failure to Have Statutory Standing Are Independent Grounds for Striking the Claims

In addition to the authority provided by 28 U.S.C. § 2466 which supports striking all claims, there is an additional basis for striking the claims.   The United States moves to strike the claims for failure to file a timely answer as specifically ordered by the Court and required by Supplemental Rule G(5)(b).   As noted above, on December 7, 2015, the Court granted the Claimants' motion to stay in part, stating: "This action is STAYED until the United States Court of Appeals for the Fourth Circuit issues a decision in *United States v. Batato*, 1:15-1360." (Doc. #32 at 6).   On December 1, 2015, Judge Nachmanoff considered a request by the Claimants for an extension of time within which to answer the Verified Complaint.   He granted the motion and said, in pertinent part, that if the district court granted a stay of the underlying action that the "Claimants' time to respond to the Complaint is extended to a date … seven (7) days after the Court lifts the stay."   Doc. #31.

---

[6]  "As § 2466 predicates disentitlement on an allowable presumption that a criminal fugitive lacks a meritorious defense to a related civil forfeiture, we find it does not violate the Due Process Clause of the Fifth Amendment and affirm the district court's decision."   *Batato*, 833 F.3d at 429.

16

Based on these orders, an answer was due in this matter by August 19, 2016,[7] which

was seven days after the Fourth Circuit issued its decision on the appeal of the related case.   The

failure to file an answer is even more egregious given that the Claimants sought and were

granted what amounted to almost a one year extension of a 21-day response period.

Pursuant to Rule G(8)(c)(i) the United States may move to strike claims for failing to

comply with Rule G(5) or because the claimant lacks statutory standing to contest the forfeiture.[8]

The claims here should be stricken for failure to file an answer to the defendant property as

required by Rule G(5)(b) and 18 U.S.C. § 983(a)(4)(B).[9]   A claimant must timely file both a

---

[7]      Absent this Court's orders, the original date for an answer would have been November
27, 2015, which is 21 days after the claim was filed.   One of the reasons why a timely answer is
important is demonstrated by Supplemental Rule G(5)(b), which provides that a "claimant waves
an objection to in rem jurisdiction or to venue if the objection is not made by motion or stated in
the answer."

[8]      *See United States v. $12,126.00 in U.S. Currency*, 337 Fed. Appx. 818, 820 (11th Cir.
2009) (the Government may move under Rule G(8)(c) to strike a claim for failure to comply with
Rule G(5) or for lack of standing); *United States v. One Men's Rolex Masterpiece Watch*, 2008
WL 2769368, *2 (W.D. Tenn. 2008) (when the Government files a motion to strike a claim or
answer for failure to comply with Rule G(5) or because the claimant lacks standing, it should do
so pursuant to Rule G(8)(c)), *aff'd*, 357 Fed. Appx. 624 (6th Cir. 2009); *United States v. Vehicle
2007 Mack 600 Dump Truck*, 680 F. Supp. 2d 816, 825 (E.D. Mich. 2010) (Supplemental Rule
G(8) authorizes the Government to move to strike a claim or answer based upon a claimant's
failure to comply with Supplemental Rule G(5)); *United States v. One 2010 River Birch Mobile
Home*, 2014 WL 5148598, *2 (S.D. Miss. 2014) (same).

[9]      *See United States v. Borromeo*, 945 F.2d 750, 752 (4th Cir. 1991) ("Courts consistently
have required claimants to follow the language of the Supplemental Rules to the letter"); *United
States v. $12,126.00 in U.S. Currency*, 337 Fed. Appx. 818, 819 (11th Cir. 2009) ("Under Rule
G(5) of the Supplemental Rules, claimants are required to file both a verified claim asserting
their interest in the seized property and an answer to the government's forfeiture complaint.");
*United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993); *United States v. Ford 250 Pickup*, 980
F.2d 1242, 1245 (8th Cir. 1992) ("requirement that both a claim and an answer be filed is plain
and unambiguous ... [and][s]trict compliance with the rule requires both a claim and an answer")
(citations omitted); *United States v. $25,790 U.S. Currency*, 2010 WL 2671754, at *2 (D. Md.
July 2, 2010) ("requirements [of Rule G(5)(b) and 18 U.S.C. § 983(a)(4)(B)] must be strictly
enforced."); *United States v. All Assets Held at Bank Julius Baer & Co.,* 664 F. Supp. 2d 97, 102

claim <u>and</u> an answer to the complaint. Because of the Claimants' failure to file an answer as specifically required by the Supplemental Rules and this Court's orders, the Court should strike their claims.

In addition to missing the clear and unambiguous deadline in the Court's orders, the failure to answer demonstrates that the claimants do not have statutory standing, which is a "threshold issue that must be resolved before addressing an asset forfeiture claim." *See United States v. $14,800.00 in U.S. Currency*, 2012 WL 4521371, *3 (D. Md. 2012). Statutory standing requires a claimant to comply with certain procedural requirements under the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture and federal forfeiture statutes. *United States v. $12,126.00 in U.S. Currency*, 337 F. App'x 818, 819 (11th Cir. 2009).[10] Thus, the failure of all of the purported Claimants to file a timely answer divests

---

(D.D.C. 2009) (striking claims because of claimants' failure to answer as required by Supplemental Rule G(5)(b)); *United States v. $19,840.00 in U.S. Currency More or Less*, 552 F.Supp.2d 632, 636 (W.D.Tex. 2008) ("In order to defend against a forfeiture, a claimant must timely file both a claim and an answer."); *United States v. 328 Pounds More or Less*, *of Wild American Ginseng*, 347 F.Supp.2d 241, 249 (W.D.N.C. 2004) (dismissing claim where claimant failed to comply with Supplemental Rules requirements, including filing of an answer); *United States v. $1,437.00 in U.S. Currency*, 242 F.Supp.2d 193, 196 (W.D.N.Y. 2002) (granting a motion for default judgment where claimant did not file a claim and filed a late answer).

[10] *See also United States v. Real Property and Premises Known as 323 Forrest Park Drive*, 521 Fed. Appx. 379, 384 (6th Cir. 2013) (claimant's "failure to file [a verified claim] within the thirty-five day period divested him of statutory standing."); *United States v. $487,825.000 in U.S. Currency*, 484 F.3d 662, 665 (3d Cir. 2007) ("forfeiture claimants must strictly adhere to the filing requirements to perfect standing"); *United States v. Commodity Account No. 549 54930 at Saul Stone & Co.*, 219 F.3d 595, 598 (7th Cir. 2000) (even though claimant argued that his unverified claim obviated need for answer, "it was proper for the district court to insist upon a timely answer" because strict compliance with standing aspects of Supplemental Rules is typically required); *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999) (claimant who fails to meet specified time deadlines in Supplemental Rules lacks statutory standing); *United States v. $417,143.78, more or less, in U.S. Currency*, 2015 WL 5178121, *9 (E.D.N.Y. 2015) (striking the claim for lack of statutory standing because it was late and unverified and because claimant did not file an answer); *United States v. $29,410.00 In U.S.*

them of statutory standing, and provides an additional basis for the Court to strike their claims.

## CONCLUSION

The claims of Megamedia Limited, Megarotic Limited, Megaupload Limited, Megavideo

Limited, Kim Dotcom, and Mathias Ortmann should be stricken based on the grounds herein.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:  _____/s/_____
Karen Ledbetter Taylor
G. Wingate Grant
Jay V. Prabhu
Assistant United States Attorneys
Attorney for the United States of America
United States Attorney's Building
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia   22314
Phone:   703-299-3700
Fax:   703-299-3982
Email Address: Karen.taylor2@usdoj.gov

---

*Currency,* 2014 WL 1276235, at *3 (W.D. Okla. 2014) ("Statutory standing requires that a claimant strictly comply with the procedural requirements of the Supplemental Rules."), *aff'd,* 600 F. App'x 621 (10th Cir. 2015); *United States v. 479 Tamarind Drive*, 2011 WL 1045095, at *3 (S.D.N.Y. Mar. 11, 2011) ("When a claimant fails to file an answer, he or she does not have statutory standing to bring a claim.").

CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of November 2017, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of

such filing (NEF) to all counsel of record.


<u>               /s/               </u>

Karen Ledbetter Taylor
Assistant United States Attorney
Attorney for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703/299-3700
Fax: 703/299-3982
Email Address: Karen.Taylor2@usdoj.gov