UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:15cv1106 |
| | ) | (LO / MSN) |
| ALL ASSETS IN AUSTRALIA AND ELSEWHERE | ) | |
| LISTED IN ATTACHMENT A, AND ALL INTEREST, | ) | |
| BENEFITS, AND ASSETS TRACEABLE THERETO, | ) | |
| | ) | |
| *Defendants in Rem.* | ) | |
| | ) | |

## CLAIMANTS' MEMORANDUM IN OPPOSITION
## TO THE GOVERNMENT'S MOTION TO STRIKE

This is an action for civil forfeiture filed by the United States. Claimants[1] timely filed

claims and then obtained two orders: one to defer the time for their answers or Rule 12

responses (Dkt. No. 31) and one staying the case generally (Dkt. No. 32). The government has

now moved to strike the claims (Dkt. No. 33). The government asserts two grounds for that

relief: (i) lack of standing based on the fugitive disentitlement doctrine, and (ii) procedural

default. Claimants obtained an extension of time to file their opposition (Dkt. No. 37), and the

government's motion to strike will be heard by the Court on January 12, 2018 (Dkt. No. 38).

Claimants have filed a motion to dismiss (Dkt. No. 39), but consideration of that motion has

been deferred (Dkt. No. 44). Claimants have filed a separate motion seeking a ruling that their

motion to dismiss be deemed timely, or to set aside any alleged procedural default (Dkt. No. 40),

which will be heard on January 5, 2018 (Dkt. No. 42). Herein, Claimants address the

---

[1]   The Claimants are Kim Dotcom (Dkt. No. 16), Mathias Ortmann (Dkt. No. 17), and
Megaupload Limited, Megamedia Limited, Megarotic Limited, Megavideo Limited (Dkt. No.
18).

government's substantive arguments for application of the fugitive disentitlement statute, for application of issue preclusion, and for civil forfeiture of these particular defendant assets.

Claimants respectfully request that the Court stay this action pending the outcome of the *Criminal Action*, decline to apply the fugitive disentitlement doctrine, and decline to forfeit all the defendant assets to the government on a mere summary record.  In the alternative, if the defendant servers are forfeited, the Court should enter an order requiring the government to preserve all the data thereon.

## STATEMENT OF THE CASE

This case involves the so-called "Mega Conspiracy," which is the subject of a criminal action in this District, as well as a prior civil forfeiture action against other alleged proceeds of the same alleged criminal enterprise.  The alleged crimes are novel theories of criminal copyright infringement.  Three civil copyright actions by alleged crime-victims also have been filed.  The criminal action is still pending.  The prior civil forfeiture action was partially adjudicated at the trial level and then appealed.  A brief explanation of the related cases is warranted:

### *1.  The Criminal Action* [2]

In January 2012, the United States filed a criminal action in this District against Kim Dotcom, Megaupload Limited, and others, for alleged criminal copyright infringement.  *United States v. Kim Dotcom, et al.*, No. 1:12-cr-00003-LO (E.D. Va. filed Jan. 5, 2012) ("*Criminal Action*").[3]  The gist of the scheme alleged in the *Criminal Action* is a conspiracy to commit criminal copyright infringement over the Internet.  *Criminal Action*, Dkt. No. 34 (*Superseding*

---

[2] The Court may take judicial notice of court records and pleadings in related criminal cases.  *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239-40 (4th Cir. 1989).

[3]   The alleged criminal conspirators include:  Kim Dotcom, Julius Bencko, Sven Echternach, Mathias Ortmann, Finn Batato, Bram van der Kolk, Megaupload Limited, Megapay Limited, Vestor Limited, Megamedia Limited, and Megastuff Limited.

*Indictment* ¶ 1, identifying alleged conspirators, alleged object of conspiracy, and allegedly illegal income from the alleged scheme).  From September 2005 until January 2012, the Mega Conspiracy allegedly used a website (including, but not limited to, megaupload.com) and numerous servers (including servers located in this District) to "reproduce[] and distribute[] copies of popular copyrighted content over the Internet without [the owner's] authorization" while earning money from users' subscription fees and advertising.  *Id.*, Dkt. No. 34 (*Superseding Indictment* ¶¶ 2-8).  The *Criminal Action*, which includes a claim for criminal forfeiture, is still pending, as certain individual defendants are opposing extradition proceedings in New Zealand.

Lower courts in New Zealand have found that Claimants Dotcom, Ortmann, and other individual defendants may be extradited.  Claimants have appealed those rulings.

### 2.  The Civil Copyright Actions

Three civil copyright actions by alleged crime-victims have been filed.  *See Microhits, Inc. v. Megaupload, Ltd.*, No. 1:12cv327-LO/IDD (E.D. Va. filed Mar. 21, 2012) ("*Microhits Action*"); *Twentieth Century Fox Film Corp. v. Megaupload, Ltd.*, No. 1:14cv362-LO/IDD (E.D. Va. filed Apr. 7, 2014) ("*Twentieth Century Action*"); *Warner Music Group Corp. v. Megaupload, Ltd.*, No. 1:14cv374-LO/IDD (E.D. Va. filed Apr. 10, 2014) ("*Warner Music Action*").  The *Microhits* case has been dismissed (*Microhits Action*, Dkt. No. 65), and the other two cases have been stayed until March 30, 2018.  *Twentieth Century Action*, Dkt. No. 70; *Warner Music Action*, Dkt. No. 60.  These private plaintiffs are cooperating with the government to seize assets related to the Mega Conspiracy.

### 3. The Prior Civil Asset Forfeiture Action

In July 2014, the government commenced a civil asset forfeiture action *in rem* against certain assets seized in New Zealand and Hong Kong because those assets were alleged to be "proceeds" of the Mega Conspiracy. *United States v. All Assets, etc.*, No. 1:14-cv-969-LO (E.D. Va. filed July 29, 2014) ("*NZ/HK-Assets Action*"). Several claimants, including Dotcom, Ortmann, and Megaupload Limited, filed claims. *Id.*, Dkt. Nos. 3-9, 14. The claimants also filed a motion to dismiss or stay. *Id.*, Dkt. Nos. 19 & 20. The government then moved to defer consideration of all motions filed by claimants pending the government's impending motion to strike. *Id.*, Dkt. No. 31. The Court granted the government's motion to defer consideration of the claimants' motion to dismiss or stay. *Id.*, Dkt. No. 32. The claimants' motion to dismiss or stay was never adjudicated.

The government then filed several motions to strike all claims. *Id.*, Dkt. Nos. 37, 39 & 60. After discovery by the government, briefing, and a hearing, the Court struck most of the claims under the fugitive disentitlement statute, and entered a default judgment that the defendant assets forfeited to the United States, which ruling has been upheld on appeal. *United States v. All Assets, etc.*, 89 F. Supp. 3d 813 (E.D. Va. 2015), *aff'd sub nom. Batato v. United States*, 833 F.3d 413 (4th Cir. 2016), *cert. denied*, 2017 U.S. LEXIS 5000 (Oct. 2, 2017). As to certain claimants, including Dotcom, Ortmann, and Megaupload Limited, that outcome is final.

That case is not over, however, because the interests of one claimant, Mona Dotcom, have not been fully adjudicated. *See United States v. All Assets, etc.*, No. 1:14-cv-969, 2015 U.S. Dist. LEXIS 31356 (E.D. Va. Mar. 13, 2015). The government has asked Mona Dotcom to consent to the stay further litigation of her claims in the *NZ/HK-Assets Action* civil forfeiture

4

action.[4]  Ms. Dotcom (who resides in New Zealand and has separate counsel there) has not yet responded to that request, nor has the government filed such a motion.

### 4.  The Current Civil Asset Forfeiture Action

By complaint filed August 28, 2015, the government commenced this civil forfeiture action *in rem* against defendant-assets in Australia, the United Kingdom, and the United States. The defendant-assets are allegedly proceeds of the Mega Conspiracy.  Formal Notice of this action was published online on September 10, 2015.  Dkt. No. 14.[5]  None of the individuals or entities identified in the complaint has been formally served with process or individual "direct notice" of the action.[6]  Claimants timely filed claims (Dkt. Nos. 16, 17 & 18)—that is, within 60 days after publication of the Notice online.[7]

The government alleges that the defendant-assets are forfeitable "proceeds" of "an international criminal enterprise … to engage in criminal copyright infringement on a massive scale and launder the proceeds."  Dkt. No. 1, *Complaint* ¶¶ 2-3.  The government asks the Court to assert *in rem* jurisdiction over certain foreign assets.  *Id*., ¶¶ 4-7.  As in the related actions, the alleged criminal enterprise is the Mega Conspiracy.  *Id*., ¶¶ 8-42.  The defendant-assets are certain money accounts, computer servers, and domain names.

After filing claims, Claimants sought a stay on alternative grounds: (i) a mandatory, statutory stay under 18 U.S.C. § 981(g)(2) pending the resolution of the related *Criminal Action*;

---

[4]  Under the civil forfeiture statute, a stay may be entered on the government's motion "if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case."  18 U.S.C. § 981(g)(1).  Apparently, the government will be seeking such a stay in *NZ/HK-Assets Action* to prevent civil discovery in that action while the *Criminal Action* is pending.

[5]  *See* FED.R.CIV.P. SUPP.R. G(4)(a).

[6]  *See* FED.R.CIV.P. SUPP.R. G(5)(b)(i).

[7]  *See* FED.R.CIV.P. SUPP.R. G(5)(a)(ii)(B).

or (ii) a discretionary stay under the Court's inherent authority pending the outcome of the appeal in *NZ/HK-Assets Action*. Dkt. No. 21. The Court entered a discretionary stay. Dkt. No. 32. Thus, as of December 7, 2015, this action was stayed. As noted above, in separate briefing, Claimants and the government are contesting whether that stay expired, leaving Claimants in procedural default.

## ARGUMENT

Whether to apply fugitive disentitlement under § 2466 is committed to the discretion of the Court. *See NZ/HK-Assets Action*, 89 F. Supp. 3d at 831; *accord id.*, 833 F.3d at 428 ("Section 2466 leaves the application of disentitlement to the court's discretion"). Whenever the Court exercises its discretion, it does not apply a "hard and fast rule," but makes an order based on "what is right and equitable under the circumstances and the law." *Langnes v. Green*, 282 U.S. 531, 541 (1931). As is shown below, to do "what is right and equitable," the Court should refrain from applying fugitive disentitlement at this time, and as to these assets, and should stay this case pending the outcome of the *Criminal Action*.

In *NZ/HK-Assets Action*, many of the same defenses were asserted as would be asserted here.[8] Having found fugitive disentitlement to apply, however, the Court never considered Claimants' defenses on the merits. Claimants respectfully submit that they should be allowed to raise these arguments in a good faith effort to modify or reverse existing law or to establish new law, or, at least, to inform the Court's discretionary analysis under § 2466.

---

[8] These defenses were extensively briefed in Claimants' motion to dismiss brief filed in the *NZ/HK-Assets Action*. MEMORANDUM OF LAW IN SUPPORT OF CLAIMANTS' MOTION TO DISMISS AND/OR STAY THE VERIFIED COMPLAINT FOR FORFEITURE *IN REM* [Dkt. No. 20], *United States v. All Assets, etc.*, No. 1:14-cv-969-LO-TRJ (E.D. Va. filed Oct. 10, 2014). Those arguments are incorporated herein by reference.

## I.      SUBJECT MATTER JURISDICTION

The Court cannot assert subject-matter jurisdiction over this forfeiture action unless the government has pleaded that the defendant assets are subject to "forfeiture … incurred under any Act of Congress."   28 U.S.C. § 1355(a).   Here, the government seeks pre-conviction civil forfeiture of the defendant assets under 18 U.S.C. § 981(a)(l )(A) and (a)(l )(C), and § 2323(a)(l) (Dkt. No. 1, *Verified Complaint* ¶ 3), and must prove that they are "proceeds" traceable to the commission of a federal crime.   Claimants contend that the "crime" for which they have been indicted—conspiracy to commit ***secondary*** copyright infringement—is not a federal crime at all.

It cannot be gainsaid that "secondary" copyright infringement is the crux of the *Criminal Action*—but that is a common law doctrine, not an "Act of Congress."   The common law doctrine of "secondary" copyright liability embraces two distinct subcategories: vicarious liability and contributory liability.   "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."   *See Metro Goldwyn Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (citations omitted).   The government's theory of the case is based on contributory infringement.   "The Copyright Act, [however,] ***does not expressly render anyone liable for infringement committed by another***."   *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984) (emphasis added).   Rather, "these doctrines of secondary liability emerged from ***common law principles*** and are well established in the law."   *Grokster*, 545 U.S. at 930 (citations omitted) (emphasis added).   And that is the problem.

Congress alone can establish a crime—not the common law.   Federal crimes are "solely creatures of statute."   *Liparota v. United States*, 471 U.S. 419, 424 (1985) (citation omitted).   In other words, "It is the legislature, not the Court, which is to define a crime and ordain its

punishment." *See, e.g.*, *Dowling v. United States*, 473 U.S. 207, 214 (1985) (citation omitted). Moreover, "when assessing the reach of a federal criminal statute, [the courts] must pay close heed to language, legislative history, and purpose in order strictly to determine the scope of the conduct the enactment forbids." *Id.* at 213. Furthermore, the courts "typically find a 'narrow interpretation'" of federal criminal statutes is "appropriate" because "penal laws are to be construed strictly." *Id.* Accordingly, the Supreme Court "has stressed repeatedly that when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Id.* at 214 (citations and quotation marks omitted). When the criminal copyright statute, 17 U.S.C. § 506, is viewed through this lens—as it must be—it is indisputable that it does not criminalize secondary copyright infringement.

Section 506 provides that "Any person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18, if the infringement was committed"

> (A)    for purposes of commercial advantage or private financial gain;
>
> (B)    by the reproduction or distribution, including by electronic means, during any 180-day period, of 1 or more copies or phonorecords of 1 or more copyrighted works, which have a total retail value of more than $ 1,000; or
>
> (C)    by the distribution of a work being prepared for commercial distribution, by making it available on a computer network accessible to members of the public, if such person knew or should have known that the work was intended for commercial distribution.

17 U.S.C. § 506(a)(1)(A) – (C). Accordingly, § 506 criminalizes certain acts of "infringe[ment]," as that word is used in the Copyright Act; but it is settled that the Act "***does not expressly render anyone liable for infringement committed by another***." *Sony*, 464 U.S. at 434. That limitation in the express terms of the Copyright Act is decisive.

Just as the rest of the Act "does not expressly render anyone liable for" secondary infringement, neither does § 506 criminalize secondary infringement. When the Court "strictly" and

"narrowly" interprets § 506, the Court must find that it does not criminalize secondary copyright infringement.  Since Congress has not "spoken in language that is clear and definite" to criminalize secondary infringement, it is not a crime.  No matter how tempting it may be to stretch the language of the Act to reach the alleged misconduct of the Mega Conspiracy, the Court cannot graft the common law doctrine of secondary copyright liability onto § 506.

To be sure, in the prior forfeiture action, the Court *sua sponte* examined its subject matter jurisdiction, and found that subject matter jurisdiction could be asserted even assuming that all that had been charged in the *Criminal Action* was "'secondary' infringement, rather than direct infringement."  *NZ/HK-Assets Action*, 89 F. Supp. 3d at 819-22 & n.4.  The Court reasoned that the *Criminal Action* and the forfeiture complaint also alleged a "conspiracy to commit copyright infringement," which was sufficient because "Section 981(a)(1)(C) authorizes civil forfeiture of property traceable to, among numerous other offenses, copyright infringement or conspiracy to commit copyright infringement."  *Id*. at 821.  Claimants respectfully disagree.

What the Court found to be sufficiently pleaded in the *NZ/HK-Assets Action* as a "conspiracy to commit copyright infringement" (*id.* at 821-22) is nothing more than a conspiracy by Claimants to commit **secondary** copyright infringement.  The same acts are alleged in this action.  Dkt. No. 1, *Verified Complaint*, ¶ 18-25.  While those allegations, if true (which is disputed), may state a civil claim for secondary infringement, they do not allege a violation of criminal law.

The government's allegations are indistinguishable from the rights-holder's allegations in *Grokster*:  that the defendants had used "a device" (here, the website; in *Grokster*, software to connect peer-to-peer networks) to "allow computer users to share electronic files," "with the object of promoting its use to infringe copyright."  *Grokster*, 545 U.S. at 919.  Such allegations,

if proven, might render Claimant's secondarily liable in a civil suit for "the resulting infringement by third parties" (*id*.), but that conduct does not constitute a federal crime.

To the extent the government relies on its conclusory allegation that once a user has uploaded a file to megaupload.com, "the site *reproduced* the file on at least one computer server it controlled" (Dkt. No. 1, *Verified Complaint* ¶ 18 (emphasis added)), that is not *copying* committed by Claimants, that is *caching* committed by computer functions. Such "system caching" is not necessarily an act of infringement by a service provider that would even expose it to civil, let alone criminal, copyright liability. *See* 17 U.S.C. § 512(b) (system-caching safe-harbor); *Field v. Google, Inc*., 412 F. Supp. 2d 1106 (D. Nev. 2006) (caching website pages to facilitate searching is not copyright infringement). And if civil liability were to be found based on caching, however, it would merely be *secondary* copyright infringement. *See In re Aimster Copyright Litig*., 252 F. Supp. 2d 634 (N.D. Ill. 2002), *prelim. inj. granted*, MDL. No. 1425, 2002 U.S. Dist. LEXIS 21453 (N.D. Ill. Nov. 1, 2002), *prelim. inj. aff'd*, 334 F.3d 643 (7th Cir. 2003), *cert. denied sub nom. Deep v. Recording Indus. of Am. Inc.*, 540 U.S. 1107 (2004) (§ 512(b) system-caching safe-harbor does not apply; *held*, provider of file-sharing service that facilitates and contributes to copyright infringement on a "massive scale" by allowing end-users to identify large numbers of similarly situated users "throughout the world"—known as "buddies"—with whom end-user can transfer files in encrypted form, may be secondarily liable for the direct infringement committed by end-users). Thus, at most, the government alleges secondary copyright infringement, and, as explained above, no Act of Congress has criminalized secondary copyright infringement.

Similarly, Claimants contend that they could not be criminally liable for secondary copyright infringement for two additional reasons. First, megaupload.com was a cloud-storage

10

business employing technology "capable of substantial lawful use," which may negate even civil liability.  *See Grokster*, 545 U.S. at 933.  Second, Claimants contend that, on its face, federal criminal copyright law has no extraterritorial application.  *See* 17 U.S.C. § 506.  "It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.  This principle represents a canon of construction, or a presumption about a statute's meaning, rather than a limit upon Congress's power to legislate."  *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) (internal citations omitted).  Simply put, "When a statute gives no clear indication of an extraterritorial application, it has none."  *Id.*  Therefore, absent a "clear indication" of extraterritorial effect in 17 U.S.C. § 506, "it has none."  This is particularly problematic regarding the acts of direct infringement allegedly committed by thousands of customers who used megaupload.com entirely outside the United States.

Accordingly, Claimants contend that the Court cannot assert subject matter jurisdiction over this action because the government alleges no violation of an "Act of Congress."

## II.    *IN REM* JURISDICTION

In the prior civil forfeiture action, the Court undertook a detailed analysis of 28 U.S.C. § 1355(b)(2), and determined that the statute provides for in rem jurisdiction over property subject to forfeiture that is located in other countries.  *See NZ/HK-Assets Action*, 89 F. Supp. 3d at 821-23.  A divided panel of the Fourth Circuit affirmed, reasoning that § 1355 provided the statutory basis for jurisdiction and that the district court had sufficient "control" of the *res*.  *See id.*, 833 F.3d at 418-22.  The dissenting member agreed that § 1355 "is a jurisdictional statute," but would have held that the case was "moot" because "[t]he district court in this case did not

have control of the *res*." *Id*. at 436-40 (Floyd, J., dissenting). Claimants contend that the dissent is correct regarding "control."

Even if § 1355 allows the Court to exercise jurisdiction over the foreign defendant-assets in this action, the government still must prove "control." It cannot. As with the assets in New Zealand and Hong Kong in the first action, the government acknowledges that the foreign assets now at issue are controlled by foreign courts, which may disburse those assets to Claimants under foreign law and procedure. This lack of control has been acknowledged by the government, which has argued in opposition to Claimants' stay motion that the foreign court's control of foreign assets would lead to "dissipation" of the foreign assets. Dkt. No. 26, at 3-4. Claimants respectfully submit that the Court should undertake a thorough analysis of "control," find it lacking, and hold that *in rem* jurisdiction cannot be asserted over the foreign assets.

## III.    DUE PROCESS

In the prior civil forfeiture action, the Court summarily rejected claimants' procedural Due Process arguments as having been waived. *NZ/HK-Assets Action*, 89 F. Supp. 3d at 832 n.21. The Fourth Circuit undertook a more extensive analysis, but nonetheless ruled that invoking a "presumption [under § 2466] that a criminal fugitive lacks a meritorious defense to a related civil forfeiture … does not violate the Due Process Clause of the Fifth Amendment." *NZ/HK-Assets Action*, 833 F.3d at 425-29 (affirming district court's Due Process ruling). Claimants respectfully disagree, and reassert their prior arguments as grounds for reversing those rulings.[9]

---

[9]    These defenses were extensively briefed in Claimants' motion to dismiss brief filed in the *NZ/HK-Assets Action*. MEMORANDUM OF LAW IN SUPPORT OF CLAIMANTS' MOTION TO DISMISS AND/OR STAY THE VERIFIED COMPLAINT FOR FORFEITURE *IN REM* [Dkt. No. 20], *United States v. All Assets, etc*., No. 1:14-cv-969-LO-TRJ (E.D. Va. filed Oct. 10, 2014). Those arguments are incorporated herein by reference.

This action presents an additional Due Process issue regarding the defendant-servers, which is explained in **Section V** below.

## III.    DETERMING "FUGITIVE" STATUS

In the prior action, the Court determined, *inter alia*, that Claimants Dotcom and Ortmann were "fugitives," and that § 2466 would apply to them, as well as to Megaupload Limited because Dotcom was a majority shareholder in that entity.  *NZ/HK-Assets Action*, 89 F. Supp. 3d at 823-29.   The Fourth Circuit affirmed.  *Id*., 833 F.3d at 429-34.   Claimants respectfully disagree, and reassert their prior arguments as grounds for reversing those rulings.[10]  Moreover, even if the Court were again to find that Dotcom, Ortmann, and Megaupload Limited are subject to § 2466, or were to apply "issue preclusion" on this issue as to those Claimants, the Court still must make findings that the other Claimant-entities are subject to § 2466.

In addition to the arguments made in the *NZ/HK-Assets Action*, the Claimants submit the following arguments, and urge the Court either to find that they are not "fugitives," or to decline on discretionary grounds to apply the fugitive disentitlement doctrine.  Because the individual Claimants are contesting extradition by lawful means, and in lawfully convened proceedings, they should not be found to be "decline[ing] to enter … the United States to submit to its jurisdiction."  28 U.S.C. § 2466(a)(1)(B).  The government nonetheless has suggested that the Claimants are making a mockery of the judicial system, or are acting cravenly by declining to face the charges stated in the *Criminal Action*.  Dkt. No. 33, *Motion to Strike*, at 8-9.  Those arguments oversimplify the international extradition process, and undervalue the rights of the individual Claimants to contest extradition.

---

[10]  CLAIMANTS' BRIEF IN OPPOSITION TO THE UNITED STATES' MOTION TO STRIKE CERTAIN VERIFIED CLAIMS [Dkt. No. 45], *United States v. All Assets, etc*., No. 1:14-cv-969-LO-TRJ (E.D. Va. filed Dec. 8, 2014).  Those arguments are incorporated herein by reference.

International extradition is "the surrender by one nation to another of an individual accused or convicted of an offence outside of its own territory, and within the territorial jurisdiction of the other, which, being competent to try and to punish him, demands the surrender." *Terlinden v. Ames*, 184 U.S. 270, 289 (1902). Extradition between nations does not rest on principles of international law, but on treaties: "In the absence of an extradition treaty, nations are under no obligation to surrender those in their country to foreign authorities for prosecution." *United States v. Alvarez-Machain*, 504 U.S. 655, 664 (1992); *Factor v. Laubenheimer*, 290 U.S. 276, 287 (1933) ("principles of international law recognize no right to extradition apart from treaty"). "Extradition treaties exist so as to impose mutual obligations to surrender individuals in certain defined sets of circumstances, following established procedures. The Treaty thus provides a mechanism which would not otherwise exist, requiring, under certain circumstances, the United States and [a foreign nation] to extradite individuals to the other country, and establishing the procedures to be followed when the Treaty is invoked." *Alvarez-Machain*, 504 U.S. at 664-65 (citations omitted). When a defendant contests extradition, he is exercising a right that is "derivative of the [responding] nation's right under" the extradition treaty. *See id.* at 667. Far from an act of mockery or craven reluctance, therefore, a defendant has the perfect right, just as the responding nation has the right, to ensure that the terms of the extradition treaty have been satisfied by the requesting nation.

Here, there is an extradition treaty between the United States and New Zealand. 22 U.S.T. 1, T.I.A.S. No. 7035, 1970 U.S.T. LEXIS 470 (1970). It sets forth the offenses for which extradition may be sought, and the procedures by which extraditions are governed. Both nations, and the individual criminal defendants, have a strong interest in the proper and regular implementation of the treaty's provisions. Claimants should not be punished for exercising their

14

rights, as opposed to taking flight.  Dotcom and Ortmann did not flee and were not "on the run" when arrested in New Zealand.  They were arrested in their own home.

Moreover, in the New Zealand courts, Claimants have contested that they cannot be extradited for "criminal copyright infringement."  The New Zealand District Court found that the gist of the charges were for criminal copyright infringement, but nonetheless ruled that Claimants "are eligible for surrender [for extradition] on all thirteen counts in the superseding indictment" in the *Criminal Action*.  *United States v. Dotcom* [2015], CRI-2012-092-001647 at [701] (Dawson, J.).  On review by the High Court, however, it was held that "online communication of copyright protected works to the public is not a criminal offence in New Zealand under [§] 131 of the [New Zealand] Copyright Act;" the High Court Judge therefore, "found, contrary to the view taken in the District Court, that this section does not provide an extradition pathway in this case."  *United States v. Dotcom* [2017] CRI-2015-404-000429, NZHC 189 at [591] (Gilbert, J.).  Nonetheless, the High Court Judge held that "the general criminal fraud provisions in the [New Zealand] Crimes Act" apply to copyright infringement, and provide an alternative "pathway" to extradition.  *Id.*, at [592].  That creates two as yet unresolved problems.

First, United States copyright law and general criminal fraud law are not interchangeable.  As the Supreme Court has explained, "the property rights of a copyright holder have a character distinct from the possessory interest of the owner of simple 'goods, wares, [or] merchandise,' for the copyright holder's dominion is subjected to precisely defined limits;" therefore, "interference with copyright does not easily equate with theft, conversion, or fraud."  *Dowling*, 473 U.S. at 417 (reversing conviction for theft, conversion, or fraud under 18 U.S.C. § 2314 when alleged misconduct was no more than copyright infringement).  Since the copyright holder's rights are

intangible—a right to exclude others from using his work without permission—his property interest is not susceptible of being stolen, converted, or obtained by fraud in the ordinary sense of federal criminal statutes.  This segues to the second problem.

Second, the extradition treaty between the United States and New Zealand includes the following provision, known as the "rule of specialty":  "A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for any offense other than an extraditable offense disclosed by the facts on which his surrender was granted … ."  22 U.S.T. 1, Art. XIII, T.I.A.S. No. 7035, 1970 U.S.T. LEXIS 470, *12 (1970).  Under the rule of specialty, "a person who has been brought within the jurisdiction of the court by virtue of proceedings under an extradition treaty, can only be tried [1] for one of the offences described in that treaty, and [2] for the offence with which he is charged in the proceedings for his extradition."  *United States v. Rauscher*, 119 U.S. 407, 430 (1886) (numbering added).  Criminal copyright infringement is not an offence described in the treaty.  22 U.S.T. 1, Art. II, T.I.A.S. No. 7035, 1970 U.S.T. LEXIS 470, *2-5 (1970) (listing extraditable offences).  To make the criminal copyright infringement counts in the *Superseding Indictment* "fit" under a listed extraditable offence, the New Zealand High Court has converted them to fraud counts, which may then preclude the criminal defendants from being tried for criminal copyright infringement were they later extradited to the United States.  If they cannot be tried for a particular crime, their assets cannot now be forfeited as the "proceeds" of that crime.

Accordingly, rushing to forfeit the defendant assets on this record, with these problems still unresolved, would be imprudent at best, and unjust at worst.

## IV.    DISCRETIONARY APPLICATION OF FUGITIVE DISENTITLEMENT

Whether to apply fugitive disentitlement under § 2466 is committed to the discretion of the Court.  *See NZ/HK-Assets Action*, 89 F. Supp. 3d at 831; *accord id.*, 833 F.3d at 428 ("Section 2466 leaves the application of disentitlement to the court's discretion").  Here, the facts and circumstances are different than in the prior action, and justify a different outcome.

First, there is no deadline in this action as there was regarding the defendant assets seized in New Zealand.  *See NZ/HK-Assets Action*, 833 F.3d at 418.  That being so, there is no apparent need to rush through a civil forfeiture action now, as opposed to waiting for a possible criminal forfeiture order later on a more fully developed record.

Second, entering a civil forfeiture order now based on an application of the fugitive disentitlement doctrine may have no effect on a foreign government's control, distribution, or disposition of the foreign defendant assets.  Again, there is no apparent need to rush through a civil forfeiture action now.

Third, while progress has been slow, the criminal case is one-step closer to either an extradition order or a definitive ruling that Dotcom and Ortmann are not subject to extradition.  As explained in Section III, the disconnection between the offences charged in the *Criminal Action* and the extraditable offences in the applicable extradition treaty have created related problems that are as yet unresolved.  Under these circumstances, there is no apparent need to rush through a civil forfeiture action now.

Fourth, Claimants contend that the government cannot meet its burden of tracing alleged criminal proceeds to the financial account assets at issue.  There were thousands of fee-paying customers who stored their materials on megaupload.com website for purposes that the government does not challenge as acts of copyright infringement.  *See Criminal Action*, Dkt.

No. 90 (Kyle Goodwin's motion for return of property).  Yet, the government nonetheless seeks to forfeit all assets as if not a single penny were untainted.  Imposing disentitlement now, on a summary record, unjustly masks over the tracing issue, and allows the government to simply take everything.

Since the forfeiture order was entered in the *NZ/HK-Assets Action*, the issue of tracing has taken on additional significance and urgency.  In *Luis v. United States*, 136 S. Ct. 1083 (Mar. 20, 2016), the high court held that a pretrial order freezing ***untainted*** assets that a criminal defendant would have otherwise used to pay her defense counsel of choice, violated her Sixth Amendment rights.  Here, the circumstances are more extreme, as the government seeks permanent forfeiture, not mere pretrial freezing, but with the same immediate impact of precluding Claimants from using untainted funds to retain criminal defense counsel.

Finally, Claimants renew their motion to stay this action pending the *Criminal Action*.  Dkt. No. 21 & 22.  There is no need to rush through a civil forfeiture action now, as opposed to waiting for a possible criminal forfeiture order later on a more fully developed record.  Moreover, were the New Zealand courts ultimately rule that Dotcom and Ortmann cannot be extradited, the government could ask the Court to lift the stay and resume this case.  Little is gained, and much is sacrificed, by rushing through a civil forfeiture case now.

## V.    DUE PROCESS ISSUES REGARDING THE DATA ON THE DEFENDANT SERVERS

The government seeks forfeiture of the servers as depreciating computer hardware that it expects to sell.  Dkt. No. 26 at 3 ("[O]ne category of assets for which forfeiture is sought in this case is 60 computer servers which depreciate every day as technology advances and hardware such as this become less valuable and eventually obsolete.  Delay in disposing of this property will have a significant financial impact on the government.").  In contrast, Claimants claim a Due

Process interest in the data stored on those servers, which is invaluable and irreplaceable—and potentially exculpatory—evidence.  Even if the Court were to forfeit the servers, it must enter an order that the government preserve the data thereon as evidence for use in the Criminal Action and related civil copyright cases.  This Due Process issue should not be swept away by an application of the fugitive disentitlement doctrine.

It is well-settled that the Due Process Clause "standard of fairness" requires that "criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984).  To that end, it is equally well-settled that "the government has a duty to preserve evidence that possesses 'an exculpatory value that was apparent before the evidence was destroyed' where 'the defendant would be unable to obtain comparable evidence by other reasonably available means.'"  *United States v. Newsome*, 322 F.3d 328, 334 (4th Cir. 2003) (quoting *Trombetta*, 467 U.S. at 489).  In such circumstances, the government may have a duty "to take affirmative steps to preserve evidence on behalf of criminal defendants," even where the evidence is not already (or not still) in the government's control.  *See Trombetta*, 467 U.S. at 486.  In this action, Claimants (who also are defendants in the *Criminal Action*) respectfully submit that the government has a constitutional duty to preserve the data on the defendant servers as potentially exculpatory evidence in the *Criminal Action*.

The test for a duty to preserve evidence is whether the "evidence that might be expected to play a significant role in the suspect's defense."  *Trombetta*, 467 U.S. at 488.  To meet this standard of constitutional "materiality," the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  *Id*. at

489.  In such circumstances, the government may have a duty "to take affirmative steps to preserve evidence on behalf of criminal defendants."  *See id*. at 486.  In this action, Claimants respectfully submit that the government has a constitutional duty to preserve the data stored on the defendant servers as potentially exculpatory evidence that "might be expected to play a significant role" in the defense against the crimes alleged in the *Criminal Action*.

This case contrasts with *Newsome*, in which the government's failure to seize certain evidence, and the subsequent destruction of it, did not arise to a constitutional violation.  In *Newsome*, the defendants were convicted of illegally cutting down certain protected trees in a National Forest.  Federal investigators found logs from the protected trees at three local lumber mills.  The logs were photographed, and cross-sectional slabs (or "cookies") of each log were taken and preserved and used as evidence.  The full logs were not seized by the federal investigators, however, and the logs were later milled into veneer by the lumber mills.  The defendants contended that the government's failure to seize and preserve the full logs constituted spoliation of evidence that violated their Due Process rights.

The Fourth Circuit rejected that contention because the defendants had access to the photographs, the cookies (which were representative samples of the trees and logs), mill records, and mill employees, all of which was deemed to constitute "comparable evidence" that was reasonably available to defendants.  *Newsome*, 322 F.3d at 334.  On that basis, the defendants' Due Process arguments were rejected.  Here, by contrast, every datum is a unique and independent piece of evidence, and so all data must be preserved.  None may be safely destroyed, nor is preservation of a "representative sample" sufficient.

In the *Criminal Action*, a similar concern has already arisen with respect to other servers. The government took control of the so-called "Carpathia Servers" pursuant to a search warrant

and obtained certain "samples" of the data, which it said it would preserve, but it disclaimed any duty to maintain those servers, or to seize and preserve the entirety of the data on those servers. *Criminal Action*, Dkt. Nos. 56 & 82.  That reasoning is fallacious in the circumstances of these cases because the data samples obtained are not representative of all the data on those servers; rather, it is only a sampling of data that (apparently) is consistent with the government's theory. Unlike the cross-sectional cookies taken in *Newsome*, which were fully representative of the logs themselves, no subset of data preserved from a computer server is fully representative of all the data.  Rather, all the data must be preserved.

Similarly, in the civil copyright actions, the plaintiffs and defendants (including the Claimants) entered into a preservation order to recover, restore, and preserve the data on the "Cogent Servers."  *Twentieth Century Action*, Dkt. No. 66.  The parties discovered that certain files and data on the Cogent Servers were not accessible, and had to be recovered and restored by a forensic computer specialist.  Such steps may be necessary here, as well.

Having seized control of the defendant servers, the government has triggered its constitutional duty to preserve the data they contain because it "might be significant" to the defense in this action, the Criminal Action, and the related civil copyright actions, and "comparable evidence" cannot be obtained by reasonably available alternative means.  Each datum or subset of data is unique, and unlike the cookies taken in *Newsome*, the government's seizure of a portion of the data from the defendant servers (or the Carpathia Servers) would not a representative sample of the entire data set.

This Due Process issue must be addressed even if the defendant servers are forfeited to the government.  Unless ordered to preserve all of the data, the government would be free to

"wipe" the data from the defendant servers and sell the hardware.  Respectfully, that would constitute intentional spoliation of evidence.

Furthermore, the Court has "inherent discretionary power to issue orders in aid of [its] jurisdiction."  *Orbe v. True*, 201 F. Supp. 2d 671, 676 (E.D. Va. 2002).  This includes issuing an order to preserve evidence when "necessary or appropriate … to ensure the proper administration of justice."  *Id*.  Such an order to preserve all data as evidence is warranted here because the data evidence is irreplaceable.

As alleged in the *Criminal Action*, the data on all computer servers used by the Mega Conspiracy would be a critical source of evidence to prove or disprove guilt.  *See*, *e.g.*, *Criminal Action*, Dkt. Nos. 34, ¶ 5; ¶¶ 25-26 (describing how content was uploaded to or downloaded from "servers").  This source of evidence has come under the control of the government, but since then, the government has tried to disclaim any responsibility for seizing and preserving this data.  Respectfully, as pointed out by the Supreme Court, assessing the importance of lost evidence is extraordinarily difficult.  *Trombetta*, 467 U.S. at 487 ("Whenever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed. … Moreover, fashioning remedies for the illegal destruction of evidence can pose troubling choices.") (citation omitted).  Thus, it is much easier to preserve this evidence now than to try to fashion evidentiary remedies later.

Accordingly, this Due Process interest in preserving the data may be grounds on which to refrain from entering a forfeiture order with respect to the defendant servers, or at least to justify entry of an order directing the government to preserve the data prior to disposing of the servers.

**CONCLUSION**

Claimants respectfully request that the Court stay this action pending the outcome of the *Criminal Action*, decline to apply the fugitive disentitlement doctrine, and decline to forfeit all the defendant assets to the government on a mere summary record.  In the alternative, if the defendant servers are forfeited, the Court should enter an order requiring the government to preserve all the data thereon prior to disposing of the servers.

Dated:  December 29, 2017                                            Respectfully submitted,

                                                                                      /s/ Craig C. Reilly
                                                                                      Craig C. Reilly, Esq. (VSB # 20942)
                                                                                      111 Oronoco Street
                                                                                      Alexandria, Virginia 22314
                                                                                      TEL (703) 549-5354
                                                                                      FAX (703) 549-5355
                                                                                      craig.reilly@ccreillylaw.com
                                                                                      *Counsel for Claimants*

*Of Counsel for Claimants*
*Kim Dotcom and Megaupload Ltd.:*

Ira P. Rothken (*pro hac vice*)
Jared R. Smith (*pro hac vice*)
ROTHKEN LAW FIRM
3 Hamilton Landing Suite 280
Novato, CA 94949
ira@techfirm.net

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2017, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users, including:

Dana J. Boente
UNITED STATES ATTORNEY
Karen Ledbetter Taylor
ASSISTANT UNITED STATES ATTORNEY
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22304
Karen.Taylor2@usdoj.gov
*Attorneys for the United States*

/s/ Craig C. Reilly
Craig C. Reilly, Esq. (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-5355
craig.reilly@ccreillylaw.com
*Counsel for Claimants*