IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALL ASSETS IN AUSTRALIA AND ELSEWHERE LISTED IN ATTACHMENT A, AND ALL INTEREST, BENEFITS, AND ASSETS TRACEABLE THERETO,<br><br>Defendants *in Rem.* | Civil Action No.: 1:15-cv-1106<br><br>The Honorable Liam O'Grady |

**UNITED STATES' OPPOSITION TO CLAIMANTS'
MOTION FOR EXTENION OF TIME TO FILE
MOTION TO DISMISS OR TO SET ASIDE DEFAULT**

Pending before the Court is the Plaintiff's Motion to Strike, Dkt. #33, a ruling on which should be based on this Court's findings that the assets at issue are illicit proceeds of crime, that the Claimants are seeking "to avoid criminal prosecution," and that it is appropriate for the Court therefore to strike any claims by the Claimants. *See United States v. All Assets Listed in Attachment A, etc*., 1:14cv969 (E.D. Va.). It is particularly appropriate to strike claims where the Claimants failed to even submit an answer within the time period ordered by this Court (after it granted the Claimants' motion to stay more than two years ago). The Court-imposed deadline to answer was August 19, 2016 and no answer required by Supplemental Rule G(5) has yet been filed. The Government filed its pending Motion to Strike on November 28, 2017. Despite having the Court extend their

deadline to answer the Complaint for over two years, the Claimants now seek to delay the proceedings even further and deny the victims of their conduct from obtaining any possible restitution.  In light of the clear prejudice, the Court should deny this attempt, dismiss the Claimants' motions, and grant the pending motion to strike their claims.

The Claimants contend that they are not in procedural default (though they still have not answered the Complaint filed on August 28, 2015), and ask that the Court should deem their motion to dismiss, Dkt. #39, as appropriate and timely, or, in the alternative, set aside any default that the Court may order and allow Claimants' motion to dismiss to be filed.  Claimants' Memorandum In Support, Dkt. #41 at 1.   The United States believes there is no appropriate legal basis to do so and the Claimants are merely trying to further delay these proceedings after years of purposeful delay.

1. **The Stay Originally Sought by the Claimants in 2015 Has Been Lifted for Over a Year By the Plain Language of the Court's Order**

On December 1, 2015, United States Magistrate Judge Michael S. Nachmanoff entered an Order extending the time to respond to the Complaint to "a date (i) seven (7) days after the Court denies the pending stay motion, or (ii) if the stay motion is granted, seven (7) days after the Court lifts the stay."  Dkt. #31.  Subsequently, on December 7, 2015, this Court granted Claimants' stay motion in part, stating

> This action is STAYED until the United States Court of Appeals for the Fourth Circuit issues a decision in *United States v. Batato*, 1:15-1360.  The Court will reconsider the request to stay this action pending the outcome of *United States v. Dotcom*, 1:15-cr-00003, on motion of the parties, after the Fourth Circuit has issued a decision in *United States v. Batato*.

Dkt. #32 at 6.  Despite its plain language, the Claimants now contend that "the Court has not yet entered an order that 'lifts the stay.'" Dkt. #41 at 7.  However, the December 7, 2015, order lifted the stay once the Fourth Circuit issued its decision in *United States v. Batato*, 1:15-1360, which

occurred on August 12, 2016,[1] *see United States v. Batato*, 833 F.3d 413 (4th Cir. 2016), and required an answer within seven days of that issuance.[2]  To conclude otherwise, as the Claimants would have the Court do, the Court would have to find that it intended to grant an additional indefinite stay and further ignore the clear dictates of the assigned Magistrate Judge.

> **2.  There Has Yet to Be a Finding of Any Kind of Default, so the Claimants' Motion are Premature, at Best.**

Claimants contend that "there is no procedural basis under which the Court could now find a procedural default" because the Government has not moved for entry of default or a default judgment under Fed. R. Civ. P. 55, nor has the Clerk entered default. Dkt. #41 at 9.  The Claimants' argument is obviously premature with respect to a default judgment, but this is not true for the Claimants' failure to meet the deadline set by the Court when they did not answer the Plaintiff's Complaint as required by Rule G(5)(b).

As indicated in its Motion to Strike, Dkt. #33, p. 16-19, under Supplemental Rule G(5)(b), a "claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim."  Rule G(8)(c) provides that the United States may move to strike a claim or answer for failing to comply with Rule G(5).  *See U.S. v. $113,550.58 In Funds From JP Morgan Chase Bank*, 3:16CV341, 2016 WL 6134536, at *2–3 (E.D. Va. Oct. 20, 2016); *see also United States v. $104,250.00 in U.S. Currency*, 947 F. Supp. 2d 560, 563 (D. Md. 2013); *United States v. Four Hundred Seventeen Thousand, One Hundred Forty–Three Dollars & Forty–Eight Cents*

---

[1] In fact, the Claimants' petition for *certiorari* before the U.S. Supreme Court in the related case was denied on October 2, 2017 and yet no action was taken by the Claimants as of the Government's filing on November 28, 2017.

[2] The subsequent language in the December 7, 2015, order merely informed the parties that the Court would consider an additional stay based on the pending criminal case if the parties filed a motion to request such a stay.

(*$417,143.48*), No. 13–CV–5567 MKB, 2015 WL 5178121, at *4 (E.D.N.Y. Sept. 2, 2015) ("At any time before trial, the government may move to strike a claim pursuant to Forfeiture Rule G (8) (c) on the grounds that the claimant lacks standing to make the claim, or on the grounds that the claimant did not comply with Forfeiture Rule G(5) ...."). "A claimant who fails to comply with the Supplemental Rules lacks statutory standing to assert a claim." *United States v. $18,690.00 in U.S. Currency*, No. 5:13CV00026, 2014 WL 1379914, at *2 (W.D. Va. Apr. 8, 2014) (*citing United States v. $119,030.00 in U.S. Currency*, 955 F.Supp.2d 569, 577 (W.D.Va.2013)).  While courts have the discretion to excuse some procedural failures, strict compliance is normally required. *See United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993) (granting motion to strike claim when claimant failed to file an answer to the complaint or demonstrate excusable neglect for failing to do so); *see also United States v. $39,557.00*, More or Less, in U.S. Currency, 683 F.Supp.2d 335, 338–39 (D.N.J. 2010).  "Courts consistently have required claimants to follow the language of the Supplemental Rules to the letter." *United States v. Borromeo*, 945 F.2d 750, 752 (4th Cir. 1991).  Here, there is no serious argument that Claimants' failure to file any answer is excusable.

### 3.  There is No Basis to Ignore the Claimants' Failure to Meet the Court's Deadline Under Supplemental Rule G(5)

Claimants contend that, if they are in procedural default, such default should be excused because (1) they have a meritorious defense to the merits of the case; (2) due process concerns are raised if the Government does not preserve the defendant servers; (3) they have been "reasonably prompt;" (4) they bear no personal responsibility for any procedural default; (5) there is no prejudice to the Government for the strike motion to be heard prior to Claimants' motion to dismiss; (6) there is no history of dilatory action; and

(7) the less drastic sanction is for the Claimants' motion to dismiss to be subordinated to the Government's pending motion to strike.  None of these bases have merit, and, as indicated in the Government's Motion to Strike and above, <u>strict</u> compliance with the Supplemental Rules is normally required.  *U.S. v. $113,550.58 In Funds From JP Morgan Chase Bank*, 3:16CV341, 2016 WL 6134536, at *2–3 (E.D. Va. Oct. 20, 2016) (citations omitted).

Claimants cite to case law treating a motion for leave to file out of time as analogous to a motion to vacate default judgment and relying on a "good cause" standard.  However, it is not necessary to consider analogous case law since courts have provided a more direct standard in motions for leave to file out of time:[3] a district court has discretion to grant a defendant leave to answer out of time under Rule 6(b) if the defendant can show the delay was caused by excusable neglect.  *Jetcraft Corp. v. Banpais, S.A. De C.V.*, 166 F.R.D. 483, 485 (D. Kan. 1996).  The excusable neglect standard of Fed.R.Civ.P. 6(b) is a more rigorous standard than the good cause standard employed when considering a motion to set aside a default judgment.  *See E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990).  Regardless of which standard the Court follows, Claimants do not meet the criteria for allowing them to file an answer at this late stage of the proceeding, and strict compliance with the Supplemental Rules is required.  The Government will nonetheless address each argument raised by the Claimants in support of their motion.

---

[3] Normally, a party seeking to file a late answer attaches a form of answer with their request for leave to make an untimely filing.  The fact that the Claimants are merely seeking to delay these proceedings is further evidenced by their failure to do so here, especially where they have fully (though unsuccessfully) litigated these same issues in a related case.

First, the Government (and the courts) disagree that Claimants have a meritorious defense.  All of the purported defenses to forfeiture asserted in Claimants' Motion to Dismiss or Stay, Dkt. #39, were raised in the companion case, as evidenced by the fact that Claimants simply incorporated by reference their prior pleadings in the related case. *Id.; see United States v. Real Property... 1 Mile Up Hennessey Road,* 2011 WL 4405388, *2-3 (E.D. Cal. Sept. 22, 2011) (declining to set aside default judgment based on conclusory statement of possible meritorious defenses).  All of their defenses to forfeiture were rejected by this Court, the Fourth Circuit (which rejected Claimants' arguments in a published opinion and then denied rehearing), and even the U.S. Supreme Court.  To contend that there are meritorious defenses, when those very same arguments have been presented to and rejected by every court to consider them is simply an inaccurate characterization of the defenses they would now assert.  If the prior exhaustive judicial review of these very same defenses is not dispositive of the merits of the identical defenses pled in this case, one has to ask what possible merit could these very defenses have now.  *See Lewin v. Cooke*, 95 F. Supp. 2d 513, 527 (E.D. Va. 2000) (noting that claims had no chance of success under clearly established precedent and discussing award of sanctions because "All of the claims set forth in this suit are substantively identical to those which have previously been dismissed on the merits by this court . . ."), *aff'd*, 28 F. Appx. 186 (4th Cir. 2002).

Second, while Claimants devote a significant portion of their memorandum, Dkt. # 41 at pp. 13-16, to arguing why the defendant servers should not be forfeited but must be preserved for the evidence they contain, Claimants have either misrepresented or have, hopefully, confused the servers listed in the instant complaint with other servers which

are not the subject of this civil forfeiture proceeding.  The servers which are named in this civil forfeiture complaint do not contain any data; they are, in fact, new servers that were purchased with tainted proceeds and which the Claimants intended to use to further their copyright conspiracy, not the servers Claimants used in their illegal endeavors.  Indeed, these sixty servers were purchased from Leaseweb on October 27, 2011.  Dkt. #1 at ¶52. The computers were seized before Claimants had taken physical possession of them. There is no due process issue relating to preservation of data on the servers because there simply never has been any data on the servers which are the subject of this forfeiture action.

Third, Claimants have not been "reasonably prompt" but have been dilatory, hence the reason for the Government's argument that their failure to file a timely answer is an independent ground for striking their claims.  Claimants Dotcom and Ortman contend they have merely been "lawfully exercising one's rights" to resist extradition in the criminal case.  Dkt.#41 at p. 17.  While it is true that these Claimants have fought extradition for over five years, that is not the delay at issue here.  Their delay is the failure for over a year to file the required answers to the complaint, essentially halting the adversary process by their unresponsiveness.  *Cf. H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir. 1970).  Claimants now complain that the Government "rushed ahead seeking to strike claims in this action based on a procedural default."  Dkt. #41 at p. 8.  Instead, though it had no duty to do so, the Government waited almost two months to file the instant motion to strike their claims after the U.S. Supreme Court ruled against the Claimants' petition in the related case on October 2, 2017.  By waiting 58 days after the Supreme Court denied *certiorari* to move

to strike claims, the Government hardly "rushed" the process when it would have been justified in moving to strike in August 2016. Claimants have no one but themselves to blame for their dilatory actions in failing to file answers when they were ordered to do so, and they were certainly not "reasonably prompt" when they still have not made the required filings (which were originally due within 21 days).

Fourth, Claimants assert they bear no personal responsibility for any purported default. Dkt. #41 at p. 16. They argue that the fact that they "live half-a-world away in New Zealand and are the subjects of criminal and civil proceedings taking place on three continents . . ." somehow excuses them and their U.S.-based lawyers from complying with the applicable rules in this case.[4] Claimants admit that they successfully sought to stay two other civil actions brought by non-governmental parties until March 30, 2018 (Dkt. 41 at p. 3), and they could have easily sought a stay after their appeal was denied by the Fourth Circuit but they did not. Even under the lesser standard applicable to a motion to set aside a default judgment, an attorney's failure to comply with the rules is not a proper basis for relief. *See United States v. $29,373.00 in U.S. Currency,* 86 F. Supp.3d 95, 99-100 (D.P.R. 2015) (denying motion to set aside default judgment; explanations offered for failure to file may have been the basis for motion for extension of time, but

---

[4] Mr. Dotcom and his army of high-priced lawyers around the world apparently are so busy that they cannot "keep[] track of due dates and deadlines." *See* Dkt. #41 at p. 3. This is particularly surprising since his U.S. attorneys all agreed to be bound by the rules and practices of the U.S. District Court for the Eastern District Court of Virginia in order to appear for this case. Mr. Dotcom does, however, have time to talk to the press and the Internet about his cases, while he enters his sixth year of living off illicit funds (including tens of millions of seized funds to some of his apparently forgetful attorneys). *See, e.g.* https://www.engadget.com/2017/10/03/supreme-court-denies-kim-dotcom-petition-40-million/ (October 3, 2017); https://twitter.com/KimDotcom/status/940874634894946304 (December 13, 2017). Dotcom and the other fugitive claimants also lost their extradition appeal at the High Court in New Zealand on February 20, 2017; their appeal of that loss is not scheduled to be heard in the New Zealand Court of Appeal until February 7, 2018.

did not constitute "exceptional circumstances; attorney's neglect "is attributable to the client"); *United States v. One 2010 Volkswagen Jetta,* 2015 WL 5666770, *3 n.7 (D.N.J. Sept. 25, 2015) (declining to set aside default where failure to file claim was due to attorney's error, citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 394 (1993).  Under the strict compliance regime of the Supplemental Rules, such an argument is obviously doomed to fail.

Fifth, Claimants assert there is no prejudice to the Government because "the Government's motion to dismiss[5] must be heard first."  Dkt. #41 at p. 17.  Supplemental Rule G(8)(c)(ii)(A) provides that the Government's Motion to Strike must be resolved prior to Claimants' motion to dismiss.  Dkt. #41, p. 4, n.4.  This argument is unavailing since the timeliness of the Claimants' inappropriate Motion to Dismiss is not at issue, while the timeliness of its answer is.  Rule G(5)(b) required an answer by the Court-imposed deadline.  The Claimants missed that deadline by more than a year; in fact, the Claimants missed filing an answer after the completion of their U.S. Supreme Court appeal in the related case by almost two months.  This timing stands in stark contrast to the concept of being "reasonably prompt."  In truth, they still have not answered the Plaintiff's complaint and they continue at every turn to try to delay the instant proceedings, with significant prejudice to both the government and the victims of their alleged criminal conduct.  They have no credible excuse.

Sixth, Claimants contend there is no history of dilatory action.  Dkt. #41 at p. 17. There are no previous examples of dilatory action in this case because almost

---

[5] The reference is apparently to the United States' Motion to Strike Claims, Dkt. #33. The Government has not filed a motion to dismiss.

immediately after the complaint was filed, Claimants obtained a stay of the action.  As explained above, the Claimants are more than a year beyond the time when the stay expired, and they have yet to even lodge proposed answers with the Court so there is clear evidence of dilatory action over an extended period of time measured in years not days.  That is a historical delay, even if it is the first.

Seventh, Claimants assert that the less drastic solution is for the Court to first consider the Government's pending Motion to Strike, presumably on the issue of fugitive disentitlement before considering the alternative ground that Claimants have failed to file an answer within the prescribed time period.  If the Court were to choose to grant the Government's Motion to Strike based on the Fugitive Disentitlement Statute, there would be no legal necessity to address the failure to file an answer except as an independent additional basis supporting the Court's ruling.  If the Court were to _only_ rule on the failure to file an answer, it would be likely that this would become the basis for an appeal that would delay these proceedings yet again.  Since both grounds are independently valid, the Government asks that the Court grant its Motion to Strike on both grounds.

Therefore, the government asks that the Court grant the United States' Motion to

Strike Claims on at least the fugitive disentitlement grounds and, if the Court wants to

send a message about the importance of its orders, the independent additional ground that

Claimants have failed to file timely answers to the Complaint as required by the timetable

ordered by the Court.  All of the Claimants' requests should be denied.


Respectfully submitted,

Dana J. Boente
United States Attorney


By: _____/s/_____
Karen Ledbetter Taylor
G. Wingate Grant
Jay V. Prabhu
Assistant United States Attorneys
Attorneys for the United States of America
United States Attorney's Building
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia  22314
Phone:  703-299-3700
Fax:  703-299-3982
Email Address: Karen.taylor2@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of January 2018, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send a

notification of such filing (NEF) to all counsel of record.


_____/s/_____
Karen Ledbetter Taylor
G. Wingate Grant
Jay V. Prabhu
Assistant United States Attorneys
Attorneys for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703/299-3700
Fax: 703/299-3982
Email Address: Karen.Taylor2@usdoj.gov