IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ALL ASSETS IN AUSTRALIA AND ELSEWHERE LISTED IN ATTACHMENT A, AND ALL INTEREST, BENEFITS, AND ASSETS TRACEABLE THERETO,<br>Defendants *in Rem.* | Civil Action No.: 1:15-cv-1106<br><br>The Honorable Liam O'Grady |

**UNITED STATES' REPLY TO CLAIMANTS'
OPPOSITION TO MOTION TO STRIKE CLAIMS**

Claimants make many of the same arguments heard and rejected by this Court and the Fourth Circuit Court of Appeals and on which the Supreme Court denied certiorari in the related case.

**I.       SUBJECT MATTER JURISDICTION**

For example, Claimants contend that the Court cannot assert subject-matter jurisdiction because the Complaint alleges "secondary" copyright infringement which is not a federal crime. Dkt. # 45 at 7.  This Court considered and rejected that precise claim in a detailed analysis, finding that the Complaint alleged a conspiracy to commit copyright infringement, thus supporting forfeiture of traceable property pursuant to 18 U.S.C. § 981(a)(1)(C).  *United States v. All Assets Listed in Attachment A*, 89 F.Supp.3d 813, 819-822 (E.D. Va. 2015).  Claimants in the prior case did not appeal this Court's ruling on the "secondary" copyright issue.  Dkt. #34 in *Batato,* Case number 15-1360 (Claimant's opening appellate brief).  The Court should reject this spurious argument which Claimants essentially abandoned in the prior case.

1

## II.     *IN REM* JURISDICTION

Claimants challenge *in rem* jurisdiction as well (we assume only for the assets at issue that are located outside the United States), urging this Court to adopt the reasoning of the dissent in *Batato v. United States*, 833 F.3d 413 (4th Cir. 2016), *cert. denied*, 2017 U.S. LEXIS 5000 (Oct. 2, 2017) that the district court's lack of sufficient "control" of the *res* defeated jurisdiction. Dkt. #45 at 11.  Notably, the panel in *Batato* was unanimous in rejecting Claimants' argument that that even though § 1355 provides for subject-matter jurisdiction, venue, and service of process in forfeiture cases involving foreign property, the Claimants maintained that the statute nevertheless purportedly includes an unstated requirement that a district court must have actual or constructive control over the "res" (i.e., the property to be forfeited), when the forfeiture suit is initiated.  The dissent was limited to a single issue: "My objection to the ruling of the district court, and to the holding of the majority, is not grounded in an objection to its claim of jurisdiction over the *res* pursuant to Congress's grant of that jurisdiction, but is rather grounded in justiciability concerns arising from Article III." *Batato*, 833 F.3d at 436, Floyd, J. dissenting.

Both the majority of the Fourth Circuit and this Court rejected the challenge to *in rem* jurisdiction.  *Id.* at 419-20; *All Assets*, 89 F.Supp.3d at 822-823.  The Fourth Circuit noted that "the cooperation (or lack thereof) of foreign nations in enforcing any of the district court's orders 'determines only the effectiveness of the forfeiture orders of the district courts, not their jurisdiction to issue those orders.'" *Batato*, 833 F.3d at 421, quoting *United States v. All Funds in Account Nos. 747.034/278, 747.009/278, & 747.714/278 in Banco Espanol de Creditor, Spain*, 295 F.3d 23, 27 (D.C. Cir. 2002).  But as the Supreme Court has explained in a different but analogous context:

> Courts often adjudicate disputes where the practical impact of any decision is not assured. For example, courts issue default judgments against defendants who fail to appear or participate in the proceedings and therefore seem less likely to comply. See Fed. Rule Civ. Proc. 55. Similarly, the fact that a defendant is insolvent does not moot a claim for damages. . . . Courts also decide cases against foreign nations, whose choices to respect final rulings are not guaranteed.

*Chafin v. Chafin*, 133 S. Ct. 1017, 1025 (2013) (citations omitted).

Claimants are essentially arguing that this Court should adopt the view of the dissent in *Batato* and reject the majority decision on the issue of *in rem* jurisdiction. Even the dissent in *Batato* admitted that Article III limits may be satisfied if there is "a showing before the district court that the foreign sovereign would be compelled, by its own law, to give binding effect to a civil forfeiture judgment by a U.S. court." 833 F.3d at 440, n. 5. If the dissent's view had been adopted by the majority, the government established the likelihood that New Zealand and Hong Kong would enforce this Court's forfeiture order in the prior civil case. Had the courts in those countries not intended to enforce the forfeiture orders once the appeals were final, something that just happened in October when the Supreme Court denied *certiorari*, they would have released the assets long ago which to this day remain under restraint. Claimants have not even suggested that the courts in Australia and the United Kingdom, where the foreign assets in this case are located, will not enforce a forfeiture order from this Court. Claimants sought rehearing in the Fourth Circuit on this very issue. The court of appeals denied rehearing, noting in its order that "No judge requested a poll under Fed. R. App. P. 35 on the Petition for Rehearing En Banc." Dkt. #70 in Case No. 15-1360. There is simply no basis to conclude that the decision in *Batato* was in error and should not govern the outcome of this case.

### III.  DUE PROCESS

Claimants again raise the same due process argument as in the prior civil case, which argument was rejected by this Court. Dkt. #12; *All Assets*, 89 F.Supp.3d at 823. While the

3

Fourth Circuit analyzed the issue differently, it ultimately concluded that there were sufficient contacts with the Eastern District of Virginia to meet due process. *Batato*, 833 F.3d at 423-25. That ruling should be followed in this case.

IV.     **DETERMINING FUGITIVE STATUS**

Claimants further incorporate their prior arguments as to determining fugitive status. Dkt. #45 at 13, n. 10. In addition, they repeat their contention that because the individual claimants are contesting extradition by lawful means, they should not be considered to be declining to enter the United States to submit to its jurisdiction, as required by 28 U.S.C. § 2466(a)(1)(B). Dkt. #45 at 13. This argument was considered by the Fourth Circuit, however, which commented that "the weight of persuasive authority on this question clearly favors finding opposition to extradition relevant to the inquiry." *Batato*, 833 F.3d at 432. Further, the *Batato* court noted that the claimants "are unable to respond to the government's logical conclusion that a 'three-year, multi-million-dollar quest to oppose coming to the United States is most surely relevant to their intent.'" *Id.* Thus, whether the claimants have a "right" to challenge extradition is not the issue. The fact that they are challenging extradition is a proper consideration for a court in determining whether they have declined to enter the United States with the intent to avoid criminal prosecution.

Though Claimants contend that criminal fraud laws and copyright laws are not interchangeable in the United States, since the New Zealand High Court Judge held that criminal fraud provisions in New Zealand apply to copyright infringement, he correctly concluded there was a "pathway" to extradition. Dkt. #45 at 15. This makes sense because if the offense of fraud in New Zealand encompasses criminal copyright infringement, then extradition to the United States for criminal copyright infringement would not violate the rule of specialty. *See State ex*

4

*rel. Onapolis v. State*, 716 N.W.2d 169 (Wis. Ct. App. 2006) (Rule of Specialty requires an extradited defendant to be tried for the crimes on which extradition has been granted and none other). *See also Zhenli Ye Gon v. Holder*, 992 F.Supp.2d 637,651 (W.D. Va. 2014) (extradition treaties are read broadly to achieve the goal of returning persons to the requesting country to face trial on certain criminal charges), *aff'd*, 774 F.3d 207 (4th Cir. 2014). The rule of specialty is designed to protect the asylum state's dignity and interests, not the interests of the accused. *United States v. Day*, 700 F.3d 713, 721 (4th Cir. 2012).

Given the resolution of this issue in *Batato*, on which the panel was unanimous, and in the absence of any relevant authority to the contrary, the door is firmly shut on Claimants' ability to succeed on their argument that they are not fugitives within the meaning of 28 U.S.C. § 2466.

## V. DISCRETIONARY APPLICATION OF FUGITIVE DISENTITLEMENT

The Government does not dispute that application of the fugitive disentitlement doctrine is discretionary. The Government does dispute that the pertinent facts are by any measure different from those in the related civil forfeiture case, however as the facts regarding fugitive disentitlement are the same, i.e., the individual claimants, who are not confined in any other jurisdiction, have purposely declined to enter the United States to evade the jurisdiction of the court in the related criminal case knowing that a warrant for their apprehension has been issued by the United States, as explained in the United States' Motion to Strike Claims, Dkt. #33 at 6-15. The discretionary analysis which this Court undertook in the previous case is just as valid now as it was almost three years ago. If anything, the Claimants' persistent refusal to appear and defend this case, after appealing this Court's interpretation and application of the fugitive disentitlement statute all the way to the Supreme Court (as well as multiple rulings in New Zealand that they are eligible for extradition), is even more reason now for the Court to reach the

5

same conclusion as in the prior, related case. A decision now on fugitive disentitlement is not "rushing" anything as the claimants allege. Dkt. #45 at 17. Rather, the sooner the case is resolved, the sooner the victims will see some compensation for their numerous losses.

While Claimants challenge whether the Government can meet its tracing burden, it must be remembered that the Complaint alleges not only copyright infringement, but money laundering as well. Dkt. #1 at ¶3. Thus, once tainted proceeds were mixed with untainted proceeds in the Megaupload Limited account number 7881380320 (the "DBS 0320 account"), monies traced from that account to other accounts and into various assets, as alleged in paragraphs 43-55, became subject to forfeiture as property "involved in" money laundering. *See United States v. Kivanc*, 714 F.3d 782, 794 (4th Cir. 2013) wherein the appellate court explained:

> Under Section 981(a)(1)(A), any real or personal property "involved in" a money laundering transaction in violation of Section 1957 is subject to civil forfeiture. 18 U.S.C. 981(a)(1)(A). Consequently, when legitimate funds are commingled with property involved in money laundering or purchased with criminally derived proceeds, the entire property, including the legitimate funds, is subject to forfeiture. *See United States v. McGauley,* 279 F.3d 62, 76–77 (1st Cir.2002) (stating that legitimate funds that are commingled with illegitimate funds can be forfeited if the commingling was done to conceal the illegitimate funds); *United States v. Baker,* 227 F.3d 955, 970 n. 4 (7th Cir.2000) (same); *United States v. One Single Family Residence Located at 15603 85th Ave. N., Lake Park, Palm Beach Cnty., Fla.,* 933 F.2d 976, 981 (11th Cir.1991) (stating that if one is a wrongdoer, "any amount of the invested proceeds traceable to drug activities forfeits the entire property").

Thus, the Government can meet its burden to forfeit, as set forth in the Complaint, under three theories: that the assets are traceable proceeds; as property involved in money laundering and with respect to the servers and domain names, as property intended to be used to facilitate a copyright violation.

Because none of the defendant property in this case is untainted property, *Luis v. United States*, 136 S.Ct. 1083 (2016), which repudiated the pretrial restraint of untainted assets in a

criminal case where those assets were needed to pay counsel, is inapplicable. First, all civil forfeiture actions premised on a proceeds theory apply only to traceable proceeds, not untainted property, and *Luis* clearly does not apply to tainted property. *Luis*, 136 S. Ct. at 1088 ("The question presented is "[w]hether the pretrial restraint of a criminal defendant's legitimate, ***untainted*** assets (those not traceable to a criminal offense) needed to retain counsel of choice violates the Fifth and Sixth Amendments.") (emphasis added). Second, *Luis* reaffirmed the notion that tainted property may be restrained even if the claimant needs the property to hire counsel. 136 S. Ct. at 1090 ("The Government may well be able to freeze, perhaps to seize, assets of the latter, 'tainted' kind before trial. As a matter of property law the defendant's ownership interest is imperfect. The robber's loot belongs to the victim, not to the defendant.").[1] *Luis*, 136 S. Ct. at 1090.

Claimants have not even alleged, much less proved, that they need the assets which are the subject of this civil forfeiture action to retain counsel. Indeed, they have successfully obtained the release of millions of dollars of ***tainted*** assets which this Court restrained in the criminal case, to not only retain counsel in the New Zealand extradition proceedings, but they have also obtained release of millions of dollars of tainted assets for living expenses. *Batato*, 833 F.3d at 418 ("Although restraining orders froze the assets in the lead up to this action, the New Zealand courts have routinely released funds to claimants for living and legal expenses. Some of these have been very substantial, including millions in legal fees for Kim Dotcom, and

---

[1] Claimants fail to acknowledge that in the related criminal case, a grand jury found probable cause that the assets which are the subject of this civil forfeiture action were, in fact, the proceeds of the very crimes for which the grand jury found probable cause to believe the defendants are guilty. Relying on the grand jury determination that the assets are traceable proceeds of crime, this Court entered a restraining order in the criminal case. Claimants' arguments here are essentially an end run around that criminal restraining order.

$170,000 per month for living expenses for the same claimant."). Even post-*Luis,* they are simply not allowed to use tainted assets for any purpose, including to hire counsel in a criminal case. *United States v. Johnson*, 683 F. App'x 241, 250 (4th Cir.) ("The bottom line is that Johnson had no right to use illegally obtained funds to hire an attorney."), *cert. denied*, 138 S. Ct. 421 (2017).

Moreover, a motion to strike based on fugitive disentitlement is not a summary judgment motion where the moving party must produce evidence. Fugitive disentitlement simply means the claimants cannot participate in the case due to their fugitive status. Once again, Claimants have failed to take advantage of the opportunity to be heard by declining to enter the United States. *Batato*, 833 F.3d at 427.

## VI. DUE PROCESS ISSUES REGARDING THE DATA ON THE DEFENDANT SERVERS

There is no due process issue as to the 60 servers purchased from Leaseweb that are defendants in this case. As pointed out in the United States Opposition to Claimants' Motion For Extension of Time to File Motion to Dismiss or to Set Aside Default, Dkt. #46 at 6-7, the servers which are named in this civil forfeiture complaint do not contain any data; they are, in fact, new servers that were purchased with tainted proceeds and which the Claimants intended to use to further their copyright conspiracy, not the servers Claimants used in their illegal endeavors. Indeed, these sixty servers were purchased from Leaseweb on October 27, 2011. Dkt. #1 at ¶52. The computers were seized before Claimants had taken physical possession of them. There is no due process issue relating to preservation of data on the servers because there simply never has been any data on the servers which are the subject of this forfeiture action. It appears Claimants are willing to accept the Government's explanation. Dkt. #47 at 15-16.

WHEREFORE, the Government prays the Court will overrule Claimants' objections to the Motion to Strike and proceed to strike all of the claims.

>Respectfully submitted,
>
>Dana J. Boente
>United States Attorney

By: _____/s/_____
Karen Ledbetter Taylor
G. Wingate Grant
Jay V. Prabhu
Assistant United States Attorneys
Attorney for the United States of America
United States Attorney's Building
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-299-3982
Email Address: Karen.taylor2@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of January 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

                                                                             /s/
Karen Ledbetter Taylor
Assistant United States Attorney
Attorney for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703/299-3700
Fax: 703/299-3982
Email Address: Karen.Taylor2@usdoj.gov